(Decided March 3rd, 1898).

---

## JACOB H. SIECHRIST *vs.* ELIZABETH E. BOSE,
### SURVIVING EXECUTRIX.

*Executors and Administrators—Bequest of Money to One for Life*
*with Remainder Over—Investment of the Fund by the Executor.*

When a sum of money is bequeathed to one for life with remainder over upon the death of the legatee, it is the duty of the executor of the will to invest the money in some safe security, under the direction of the Court ; and when such investment has been so made and the executor passes his final administration account, he is discharged from all further liability for such legacy.  The duty of protecting the fund is then upon the life-tenant.

Appeal from an order of the Orphans' Court of Baltimore City, where an opinion was filed by CHIEF JUDGE WRIGHT of that Court, in the course of which he said : " We are of the opinion that all the necessary and proper steps looking to the investment and security of this fund were taken by the executors.  They sought, obtained and executed the order of this Court, in the manner before stated, for the investment originally of the $2,900 in Western Maryland stock, and in such a way as to effectually secure the interests of both the legatee for life and the legatees in remainder, and passed their final administration account.  What more remained for them to do ?  They had

paid or secured the payment of this legacy so far as it was in their power so to do as executors, and their entire duty in this respect had been fully performed. And but for the extraordinary and anomalous events and circumstances which afterward developed to cause them, in the interests of the estate, to seek as before stated, in a manner to re-charge themselves with a portion of this fund, viz : That portion represented in the $800 certificate of Baltimore City stock, which by resolution of the Mayor and City Council was made payable to them as executors ; and which they received, reinvested and secured in like manner, under the further order of the Court, there could be no ostensible reason or pretext for holding them liable for the production of this fund in Court, or to further account for it. We think it was not in their power to re-assume, nor has this Court the authority to re-impose upon them such liability. * * It was contended that the certificates of stock should not have been delivered to the legatee for life, but should have been retained in the possession of the executors. " In the absence of statutory or judicial requirements a legatee for life is entitled, without security, to possession of the estate bequeathed." 2 *Williams on Executors*, 705 ; 4 page 1253 ; note 30 and authorities cited. It has been largely, if not the invariable practice, to deliver to the legatee for life certificates of stock issued as this was. We do not see how, ordinarily, there could be any risk or any interest prejudiced by such possession any more than there could be in intrusting a check to one person when drawn to the order of another person, or of a deed of distribution to one for life with remainder over to another, and allowing the tenant for life to hold in his possession such deed—the muniments of his title—so long as his interest continued. These stock certificates are not property. They are the evidences only of the investment. We can readily conceive how it would be convenient, if not necessary, for the legatee for life to have possession of these certificates. She is to receive interest on them at stated times, and it would be

reasonable that she should have them to exhibit if required. Everybody who dealt with them would take them charged with notice of the provisions of the will affecting the stock. *Marbury* v. *Ehlen*, 72 Md. 206. We are of the opinion that there was no breach of duty on the part of the executors in delivering to the legatee for life these stock certifi- ·cates.''

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Jan. 28, 1898).

*John S. Young* and *H. Arthur Stump*, for the appellants.

The controversy in this case arises from the position of the appellants that, under the terms of the will and the law applicable to the case, it was the duty of the executors, from the time of their qualification or of the surviving ex- ·ecutor, since the death of one of them, to keep the princi- pal of this legacy within their own control and invested preferably under the direction of the Orphans' Court or Equity Court for the purpose of allowing the life-tenant or legatee for life, Margaret Siechrist, to enjoy the income thereof during her life, and to secure certainly the payment ·over of said principal, upon the death of the legatee for life, to the legatees in remainder, and thus carry into effect the evident intention of the testator, and perform the duty for which they were appointed in the will as executors, and that as such surviving executor it is the duty of said Eliza- beth Emma Bose to bring into Court the said certificate of city stock for $1,800, and also to bring into Court for re- investment the $800 of the principal paid by the city for the redemption of the other certificate ; thus showing to the Court the principal of the legacy (the *corpus*) to be be- yond the control of either the legatee for life or the legatees in remainder. The legatee for life is not now and never has been entitled to the possession or control of the princi- pal, and never can be because under the terms of the will it was never designed to place the same in her possession or

under her control where, either by accident or design it might be lost, and thus upon her death not be delivered to the legatees in remainder. The executors take the risk upon themselves when they deliver the principal to the life-tenant, or leave it in her possession.

Unless the testator has expressly named some other person (trustee) in the will to perform the duties incident to the bequest, those duties are incident to the office of executor, and under the name of executor he must perform or execute the trust reposed in him in accordance with law. The executor becomes in law a trustee bound to make the fund productive by investment, and to pay the income to the legatee for life and to keep the principal during the life of the legatee for life away from the control of both the latter and the legatee in remainder, so as to carry out the clear intention and desire of the testator to have the one· receive the income during life and the other the principal, without fail, at the death of the life-tenant. The executor is the person designed by the testator to perform these duties which end only when the executor, upon the death of the legatee for life, pays over the principal to the legatee in remainder. *Hindman* v. *State use of Tosh*, 61 Md. 471; *Evans* v. *Iglehart*, 6 G. J. 171; *Dittman* v. *Robinson*, 57 Md. 495 ; *Hughes* v. *Wilmer*, 65 Md. 186 ; *Woods* v. *Fuller*, 61 Md. 457; *Hill on Trustees*, 570 ; 2 *Perry on Trusts*, sec. 543 ; *Lewin on Trusts*, 769.

*Arthur W. Machen*, for the appellee.

Interest on the original investment in city stock was paid by the city to Margaret Siechrist until the first day of July, 1878, when, while continuing to pay her interest on $1,800 of the principal amount mentioned in the certificate, it refused to pay interest on the remaining $1,100, on the ground that this portion of the whole amount represented two certificates, one for $600 and the other for $500, issued and payable to Frederick M. Ketchum, a minor, both of which had been transferred upon forged indorsements. For the

*story* of this forgery, and the litigation arising out of it, see *Ketchum* v. *Mayor and City Council of Baltimore,* 57 Md. 23, and *Bishop & Helm* v. *The State,* 55 Md. 138. One Rosenburg, imposed upon by the forgers, took title (as he supposed) to the stock, and from him brokers, employed by the executors to invest the whole sum, in good faith bought-it. The legal consequence was that the $1,100 of the said stock of 1902, so supposed to be contained in the said certificate for $2,900, really belonged to Frederick M. Ketchum. That the city, upon principles of equitable estoppel, was responsible, in some manner, to Margaret Siechrist and those who might be interested in remainder under the will of William Bose, could not reasonably be doubted. The city, however, had no stock of 1902 to substitute for that of which its certificate had thus purported to give assurance—the limits of the loan having been reached, it could not legally issue any more stock. Under these circumstances it offered money in lieu of the deficiency. A resolution of the Mayor and City Council approved April 29, 1882, Ord. and Res. of 1882, Res. No. 123, authorized the Comptroller to give the executors of Wm. Bose a warrant on the City Register for $1,465.76 on the surrender and cancellation of certificate No. 764, for $2,900 Baltimore City stock, Western Maryland Loan of 1902, " standing in the name of Margaret Siechrist for life and subject to the provisions of the will of William Bose, deceased," and provided that, on the surrender and cancellation of said certificate, the Register, in addition to such payment of eleven hundred dollars of said stock with interest, shall issue a new certificate for the remaining eighteen hundred dollars.

The situation was anomalous and extraordinary. The estate had been fully administered. Every duty imposed by law upon the executors had been performed. An investment, intended fully to protect all interested in the fund had been made under the direction of the Court, the estate entirely distributed, and a final account passed. Yet it was

obvious that, when the executors made the investment and
the Court approved it, it was upon the assumption that a
*valid* and therefore *real* purchase had been made of the
$1,100 of Baltimore City Western Maryland stock of 1902,
as well as of the other $1,800.   But this assumption had
turned out to be erroneous.   The purchase intended had
not been really made.   JUDGE DOBBIN, the senior executor,
thought, and, of course, Mrs. Bose acted upon his judg-
ment, that in these peculiar circumstances it might be con-
sidered that according to the spirit of the order of 25th
January, 1877, the investment had not been completely
effected.   Accordingly, they received the sum of $1,465.76,
being the value of $1,100 of the old certificate, with inter-
est to May 1, 1882, the city at the same time issuing a new
certificate for the other $1,800 of the stock of 1902, in the
same form precisely as the original, except as to the
amount.   The old certificate was surrendered to the city.
The executors then reported the facts to the Orphans'
Court, and asked its direction for the investment of the
principal money so received from the Mayor and City Coun-
cil of Baltimore.   The Orphans' Court thereupon passed
its order of 9th of May, 1882, in which, after allowance of
a fee to the counsel who had represented the estate in the
litigation, the executors were required to invest the balance
in Baltimore City stock, with the direction "that said in-
vestment be made in the name of Margaret Siechrist, lega-
tee for life, subject to the provisions of the will of William
Bose declared as to the remainder."   The order further
provided that the "executors exhibit the certificate to this
Court immediately thereafter, showing their compliance
with this order."   In conformity with this direction the ex-
ecutors invested the balance of principal money in Balti-
more City stock of the loan redeemable after July 1, 1890.
The certificate therefor, No. 40,799, dated 5th of October,
1882, certified that the corporation of the city of Baltimore
was "indebted to Margaret Siechrist for life, subject to the
will of William Bose in this behalf, in the sum of eight

hundred dollars, redeemable at the pleasure of the Mayor and City Council after the first day of July, 1890, and until so redeemed bearing interest at the rate of 6 per centum per annum."

· I. The question which naturally first presents itself is as to the jurisdiction of the Orphans' Court to entertain such a petition. (1). If the appellants—supposing them to be, as they pretend, children of Margaret Siechrist—stand upon the order of the Orphans' Court passed on her *ex parte* petition in September, 1890, then their application should be to that Court, or a Court of Equity, to require Margaret Siechrist to bring the money into Court, or to direct its disposition. If they deny the validity of that order of 1890 and dispute the jurisdiction of the Court to pass it, then the city of Baltimore, by construction of law, still holds the money, and, as Margaret Siechrist, who, during her life, is alone entitled to the annual interest, is living, they have no present interest in the matter.

(2). Until the death of Margaret Siechrist, it is wholly uncertain who are then to take the fund. Unless her now living children—supposing her to have any children, of which there is no proof—shall survive her, they will never have any interest in it. This is the case of a contingency of that most uncertain of all kinds, namely, where *the persons to take* are undetermined. The children, in such case, are not contingent remaindermen ; they have no estate, contingent or vested, but only a possibility. They have nothing to say—no standing in any Court to say anything, as to the investment of the fund. *Contee* v. *Dawson*, 2 Bland, 290.

II. The estate has been fully administered by the executors, and there is no duty or legal pre-requisite which they have failed to perform.

(1). ·It is immaterial whether a legacy such as that to Margaret Siechrist be considered as presenting a case falling under section 10, Article 93 of the Code, or not. The provisions of the statute have been complied with, if it does

have application, and independently of it, the executors
have performed their duty.   The doctrine of *Evans* v. *Igle-
hart*, 6 G. & J., 196, is, that if the legacy "consist of money,
or property, whose use is the conversion intomoney   *   *
an investment thereof must be made by the executor in
some safe and productive fund, or it must be put out on
adequate securities, and *most properly* under the *authority*
and *direction* of the *Orphans' Court*, or a Court of Equity,
so as to secure the dividends, interest or income to the
legatee for life, and the principal after his death to the leg-
atee in remainder."   The jurisdiction·of the Orphans' Court,
for such purpose, and the complete protection thereby
afforded the executor, have been abundantly affirmed since
then.     *Miller & Mayhew* v. *Williams*, 5 Md. 219; *State
use of Dittman* v. *Robinson*, 57 Md. 495 ; *Wootten* v. *Burch*,
2. Md. Ch. 199 ; *State* v. *Hewlett*, 48 Md. 138.

(2). The estate was fully and finally administered in the
final account which was passed.   *Binnerman* v. *Weaver*, 8
Md. 524; *Hardt* v. *Birely*, 72 Md. 136; *Blumenthal* v.
*Moitz*, 76 Md. 564, 567; *State, use of Gable* v. *Cheston*,
51 Md. 380 ; *Biays* v. *Roberts, Admr.*, 68 Md. 510 ; *Myers*
v. *Safe Deposit and Trust Co.*, 73 Md. 425.   The account
itself declared that it was a *final* account ; and it is evident
that the intention was to make a complete distribution of
the estate.   As to the Siechrist legacy, the entire legacy
was disposed of, and not merely the life-interest of Margaret
Siechrist ; the investment under the order of the Court was
referred to, which provided for those who should be inter-
ested in remainder as well as for her own interest.   Such a
final accounting and distribution once made is not capable
of being afterwards undone, even by concurrence of the
executors and the Orphans' Court.   *Hardt* v. *Birely*, 72
Md. 136.   If a complete administration cannot be effected
in the manner pursued in this instance, it can only be on
the ground that wherever a money legacy is given to one
person for life, with remainder to a class only to be ascer-
tained at the death of that person, it is necessary that the

executor shall retain the fund in his possession and control all through the life of the legatee for life, without power to finish the administration until his or her death.    No Maryland decision sanctions such a rule or principle.    The inconveniences of its adoption would be exceedingly great.    No one (except a corporation endowed with perpetual life) could then prudently accept the office of executor ; no one could reasonably be expected to become surety in a testamentary bond.    In this case William Bose's will was proved in January, 1876.    *Twenty-two years* have since elapsed, and Margaret Siechrist is yet living.    But this by no means measures the term to which the office of administration would have to be protracted.    A testator not unfrequently makes *several* bequests of this character in his will.    In this instance there are *three.*    There is no legal limit to the number possible.    It is evident that the period during which the ordinary administration of estates would be protracted might be at least as great as that during which Thelluson, in the famous case of his will, attempted to tie up his estate for accumulation.    But Thelluson constituted a *trust.*    Here Mr. Bose contemplated no trust, and certainly he could not have intended to embarrass his *wife*, whom he made executrix, with a duty and care so indefinite and oppressive.

PAGE, J. , delivered the opinion of the Court.

By his last will, admitted to probate on the 29th January, 1876, William Bose bequeathed to Margaret Siechrist the sum of $3,333 for life, and after her death " to be equally divided among her children then living, and the descendants of any who may have died, such descendants taking the portion their parent would have taken had he or she been then living. "    The executors, the late Judge Dobbin, and Elizabeth E. Bose (widow of the decedent), on the 25th January, 1877, filed a petition in the Orphans' Court for Baltimore City, in which, after stating their readiness to pay the said legacy, they prayed for an order directing them to invest the money " so as to meet the requirements of

said will and protect the interest of all the parties interested
therein." On the same day the order was passed, direct-
ing the executors to invest the sum in United States, State
or city stock "in the name of Margaret Siechrist, legatee
for life, subject to the provisions of the will of William
Bose declared as to the remainder." Subsequently the ex-
ecutors passed their "first and final account," in which
they were allowed the amount, "invested under an order
of the Orphans' Court   *   *   for the benefit of Margaret
Siechrist for life   *   *   and subject to the provisions of
the will of the decedent." The record shows that in car-
rying out the requirements of the order of the Orphans'
Court they purchased $2,900 of the Western Maryland
City stock, redeemable in 1902, and caused the certificate
to be issued "to Margaret Siechrist for life, subject to the
provision of the will of William Bose in this behalf." All
interest accruing on this amount was paid until July, 1878,
when, in consequence of the discovery that $1,100 of the
stock were part of the "Bishop forgery" the city refused
to pay interest on that portion of the stock, but contin-
ued to pay on the residue. Subsequently, however, the
city by ordinance passed in 1882, authorized its Comp-
troller to issue a new certificate for $1,800 and pay
$1,465.76 (this sum being the $1,100 and accrued interest)
on the surrender of the original certificate for $2,900. This
was accordingly done. On the 9th of May, 1882, the ex-
ecutors reported the facts to the Orphans' Court. They
state in their report that they "will now hand over to the
life-tenant the new certificate for $1,800 and will pay them
(*sic*) the accrued interest which has been paid by the city ;
but under the terms of said will of William Bose must re-
invest the principal." In compliance with the order passed
on the same day, they invested the amount of principal in
their hands in city stock in the manner directed, that is to
say, $800 in the name of "Margaret Siechrist for life, sub-
ject to the will of William Bose in this behalf." In 1890,
this stock having fallen due and been called for redemption,

Margaret Siechrist obtained an order from the Orphans' Court, permitting her to surrender the certificate and receive the money. The order which was passed on the 27th of September, 1890, does not require her to bring the money into Court, and though she received the check of the city for $800, the record does not show that she has ever made a report of the transaction or re-invested the fund.

Upon these facts the children of Margaret Siechrist, with the husbands of her daughters, pray the Orphans' Court to require the appellee as the surviving executor of the will of William Bose, to show how the legacy in question is invested ; if invested to bring into Court the evidences of the investment ; and if not, to bring the money into Court. The answer of Mrs. Bose among other things, sets up the defence, that the said sum has been fully administered and as surviving executrix she has no further concern therewith, and that the Court is without jurisdiction in the premises. The Court dismissed the petition, and from its order this appeal is taken.

The principle is well established in this State, that " Where a legacy consists of money or property whose use is the conversion into money, it is the duty of the executor to invest the same in some productive fund, or it must be put out on adequate securities, and most properly under the direction of the Orphans' Court or a Court of Equity, so that the dividends or income may be received by the legatee for life, and the principal, after the death of the legatee for life, may be received by the legatee in remainder." *Evans* v. *Iglehart,* 6 G. &. J. 196 ; *Wooten* v. *Burch,* 2 Md. Ch. 196. This duty rests upon the executor, independently of the provisions of sec. 10 of Art. 93 of the Code ; it is founded upon the obligations, " devolving upon the executor with reference to the property in his hands so bequeathed, and to which his assent is necessary to perfect the title." *State use of Dittman* v. *Robinson,* 57 Md. 495. That section, indeed, seems to be an application of the general principle, just stated, to cases where it is necessary for

the executor to retain in his hands the personal estate or any part thereof, " as where money or some other thing is directed to be paid at a distant period or upon a contingency." In a case where money was bequeathed to James Hewlett, upon condition he should pay to Jack Hewlett a particular sum, when the latter should arrive at the age of twenty-five years, it was held not to be within the section, because the will in terms or by implication, did not require that the fund should remain in the hands of the executor, but was expressly bequeathed to James. *State, &c.* v. *Hewlett,* 48 Md. 144.

The fundamental idea that underlies the rulings of the Court, as well as the main design of the statute, is the preservation of the fund, so as to secure it to those who under the will or by law shall be thereafter entitled to it. " To this end," to quote from the opinion of the Court, in *Gunther & Canfield* v. *The State,* 31 Md. 30, " it is made the duty of the executor or administrator having the money or property in hand, to apply to the Court for direction in the premises and on such application the Court is clothed with full power to decree or direct in what manner it shall be disposed of, to effect the contemplated purpose." Even if it could be held, that this case is within the provisions of the section, it would not follow therefrom, that the safe keeping of the investment necessarily devolved on the executors. The section does not so provide; on the contrary, as was said by JUDGE MILLER in *Gunther & Canfield* v. *State, supra,* " the mode of disposition for safe keeping and security is not prescribed, but left, in each case, to the sound discretion and judgment of the Court." But we do not think the provisions of sec. 10 of Art. 93 apply to this case. Those are applicable, as already has been said, to cases where the money or some other thing is to be paid at a distant day or upon a contingency and must either by the terms of the will or of necessity remain in the hands of the executor. But the will of Mr. Bose imposed no necessity upon the executors to retain the fund or to secure the payment of the

interest to the legatee for life; what they were bound to do was to invest the fund in such a manner as to secure to the legatee for life the interest or dividends, and to the remainder legatees, the principal fund, when they became entitled to receive it. Where, under the terms of the will, there are active duties to be performed with reference to a legacy and no one has been designated to perform them, in such case, the performance of such duties devolves upon the executor, and he cannot divest himself of them while holding a representative relation to the estate, nor can he be divested of them by order of the Orphans' Court. *Hindman* v. *State use of Tosh*, 61 Md. 475.

In this case it was the duty of the executors to invest the fund in accordance with the directions of the Orphans' Court, and when so invested no right remained in the executors to retain it. The bequest was to Mrs. Siechrist for life; the testator intended it should be her property for that period; she therefore was entitled to have the possession of it for that period, on such terms as would protect the interests of those who were also interested in the fund. What she did with it after she received it was a matter that could not concern any one else than those who were to take the fund at her death. If her treatment of it was such as to jeopardize its safety, a Court of Equity on proper application has full power to require such security to be given as might be needed. The executors fully discharged their duty in making the investment according to the requirements of the order of the Court. They were acting, in so doing, under the authority of a Court of competent jurisdiction. *Gunther & Canfield* v. *The State, supra.* And are therefore now fully protected by its order. When the investment was made, and the allowance therefor had passed the Court, the estate so far as this fund was concerned was fully administered, and all rights of the executors over it terminated. In the case of *Myers* v. *The Safe Deposit, &c.,* 73 Md. 415, a testator gave the residue of his estate to his widow for life, and at her death to pass to such of his chil-

dren and grand-children as she should appoint by will, and in default of such appointment to his children and descendants in the same manner as if he had died intestate.   The widow who was the executrix, passed an account in which she was allowed " for the residue of the estate detained by her as widow of the deceased for the purposes and subject to the conditions set forth in the will, &c."   The Court held, that " that was a most effectual way of making the final distribution.   Thereafter she held, not as executrix, but as tenant for life   *   *   *   *   the estate was entirely closed and her administration was at an end."   Other cases could be cited to the same effect.

It is not important for the purposes of this case to discuss the effect of the subsequent occurrences disclosed by the record, in reference to the fund in question.   We are of opinion, that after the investment of the money in compliance with the order of the Court, and the allowance in the account of the executors of the amount so invested, the administration terminated, and the executors became discharged from all further liability as to the legacy.   Margaret Siechrist then held the fund as tenant for life, and the duty of protecting the fund was upon her and not upon the executors.

The order must therefore be affirmed.

*Order affirmed.*

(Decided March 3rd, 1898).