NANNIE C. OESTERLA ET AL. *vs.* SAMUEL GAITHER ET AL.

*Jurisdiction of Orphans' Court—Investment of Fund Bequeathed to One For Life With Remainder Over—Release of Mortgage.*

A testatrix gave one-fifth of her estate to her daughter A for life, with remainder to A's children. At the time of the death of testatrix she held a mortgage on a farm belonging to her daughter's husband, the amount of which was about equivalent to the daughter's legacy. In pursuance of an order of the Orphans' Court, passed upon application of all parties in interest, the executor released this mortgage so as to enable the legatee and her husband to execute a first mortgage to another party, and invested the legacy in a second mortgage on the same farm. The first mortgage was subsequently foreclosed, and the proceeds of sale were insufficient to discharge it. Upon a bill to have the release of the mortgage to the testatrix declared void, *Held*, that since the Orphans' Court had jurisdiction to order the legacy to A to be invested in the mortgage from her husband, the estate of the testatrix was then fully distributed, and the validity of the release of the original mortgage to the testatrix cannot now be questioned, in the absence of fraud.

Appeal from a decree of the Circuit Court for Howard County (JONES, J.), dismissing the bill of complaint. The prayer of the bill was as follows:

(1). That the alleged short release of mortgage made and executed by the said Stephen G. Hood, executor, on the thirty-first day of May, eighteen hundred and eighty-seven, may be declared null and void. (2). That said original mortgage made by said John Eugene Buck and wife, to said Sarah Hood, bearing date of April twenty-second,

eighteen hundred and seventy-four, may be declared in full force and effect, and decreed to be paid, and its payment enforced by a foreclosure of the same. (3). That the money arising from said mortgage indebtedness may be invested by this Honorable Court in accordance with the terms of the said will of Sarah Hood, deceased, so that the rights of your orator in said fund may be fully protected. (4). That said foreclosure proceedings instituted by said James Mackubin, assignee, be stayed pending the decision of this cause. The plaintiffs in the bill were the children of Josephine Buck.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and BOND, JJ.

*Edward T. Jones* (with whom was *George R. Gaither, Jr.*, on the brief), for the appellant.

1. An executor has no power to release a mortgage security belonging to the estate except for money received in full settlement of the same. *Parkham* v. *Stith*, 56 Miss. 473 ; *Baldwin's Appeal*, 81 Pa. St. 443 ; *Miller* v. *Williamson*, 5 Md. 231 ; *Smith* v. *Ayer*, 101 U. S. 328.

2. The order of the Orphans' Court does not protect Gaither from responsibility to the plaintiffs. *Hindman* v. *State*, 61 Md. 476 ; *Wootton* v. *Burch*, 2 Md. Ch. 190 ; *Low* v. *Low*, 6 Md. 454.

*J. Mackubin*, for the appellee, submitted the cause on his brief.

The trust under Mrs. Hood's will never attached to this Hood mortgage specifically. The mortgage to the executor was the first set apart as part of Mrs. Buck's one-fifth, and that with the final order of distribution, constituted an equitable assignment of said second mortgage to Mrs. Buck. For by the terms of her mother's will, she was entitled *herself* to receive said one-fifth, " *to have, hold, use and enjoy* during her life," &c. In other words, the will gave *to her the custody* of the one-fifth, to use and enjoy during her life and in trust

for her children at her death.  *Boyd* v. *Boyd*, 6 G. & J. 25 ; *Miller & Mayhew* v. *Williams*, 5 Md. 233–4.

It was wholly within her right to take to herself this one-fifth in money, or to control its disposition.  She and her husband elected to place it in that second mortgage and the Orphans' Court, at their prayer, so ordered.  On final distribution, she was entitled to that mortgage, but they elected to leave it as it was.  It was *their* fault, if fault there was, and no one else's, that said second mortgage became worthless. By their omission or misfortunes, the interest was not paid on the first mortgage, so that it grew from $3,000.00 to $4,040.44, besides taxes in arrear and cost of sale, to which was added the general and severe depreciation in the value of farms, and that of this one from neglect and want of repairs.  But even if Mrs. Buck was not entitled to the custody of that one-fifth and it devolved *on the executor* to retain and preserve it for the children at her death, it was his right to ask the direction of the Orphans' Court, or a Court of Equity, as to the investment of it and to be protected by its order.  *State* v. *Robinson*, 57 Md. 495 ; *Hindman* v. *State, use of Yoch*, 61 Md. 475 ; *Siechrist* v. *Bose*, 87 Md. 284.

FOWLER, J., delivered the opinion of the Court.

On the 22nd April, 1874, John Eugene Buck and his wife, Josephine Buck, executed a mortgage on his farm in Howard County, to his wife's mother, Sarah Hood, to secure the payment of a promissory note to her for $2,752.63. This mortgage was duly recorded.  Mrs. Hood died in 1887, leaving the mortgage note and mortgage as part of her estate.  As such, her executor, Stephen G. Hood, became possessed of them.  On the 20th May, 1887, the mortgage was released by the executor by order of the Orphans' Court of Howard County upon the petition of Buck and wife.  This petition alleges that the petitioners had executed the mortgage in question for the sum therein mentioned ; that the said mortgagor, Sarah Hood, in the meantime had died, and that the said mortgage note had re-

mained unpaid; that by her last will and testament, the petitioner, Josephine Buck, a daughter of the testatrix, was made one of the residuary legatees and devisees, and that one-fifth of the residue of the estate was by said will given to her for life, and at her death to her children; that the testatrix's estate was not indebted to any extent, and that one-fifth of the residue thereof, so given to Josephine for life, will amount to the sum of $2,800; that the petitioners were indebted to said estate in the further sum of $700, and they are anxious to pay off all liens on their property. The prayer of the petition is that the executor be authorized to release said mortgage and to invest the said mortgage debt in a second mortgage on said mortgaged property, subject to a mortgage for $3,000 to Samuel Gaither, out of which last-named sum the petitioners were to pay the amounts due by them to said estate over and above said first mortgage debt of $2,752.63, which said second mortgage was to be held as security for said sum, according to the provisions of said will, as a portion of the residue bequeathed to the petitioner, Josephine Buck for life, and at her death to her children. As we have said, the Orphans' Court so ordered, and the mortgage to Gaither for $3,000, as well as that for $2,752.63 to the executor, were executed and recorded—the former having priority as provided by the order. On the 19th April, 1890, Gaither assigned his mortgage to Georgia A. Talbott, who, with her husband, assigned it to James Mackubin for collection. It was not until the 9th August, 1897, that Mr. Mackubin proceeded to sell under the power of sale contained in the mortgage to Gaither. After some delay, caused by exceptions to the sale, it was finally ratified, the mortgagee, Gaither, being the substituted purchaser. On the 1st February, 1898, the Circuit Court ordered, all parties assenting by their attorneys, that a previous order staying proceedings in the mortgage sale be rescinded; that all exceptions to the sale reported be overruled, no testimony having been taken to sustain them, and that the sale to him be ratified. It was,

however, provided by this order that nothing therein should impair any of the interests of any of the parties under the mortgage from Buck and wife to Sarah Hood—and all questions relating thereto and to the operation and effect of the release of said mortgage by her executor, and of said mortgage from said Buck and wife to said Gaither were expressly reserved. Before the passage of this order, the plaintiffs had filed their bill, and, without unduly prolonging this opinion by a further recital of the numerous proceedings which have been taken in connection with these mortgages, it is sufficient to say that the question, and the only question now presented is the one reserved by the learned Judge below in the latter part of the order of 1st February, 1898, namely, the effect of the release of the mortgage made to Mrs. Hood, the testatrix, in her life-time, which release it will be remembered was executed under an order of the Orphans' Court by Stephen G. Hood, as executor of his mother, Sarah Hood. For if the Orphans' Court had jurisdiction to pass that order the action of the executor in pursuance of it is valid and binds all parties in interest, and the bill which asks the release to be declared void, and the mortgage from Buck to Sarah Hood to be reinstated, will have to be dismissed.

In the first place, it seems proper to remark that Mr. Buck and his wife, two of the plaintiffs who are now attacking the validity of the action of the Orphans' Court, are the same persons on whose petition its jurisdiction was exercised. Mrs. Buck, the daughter of the testatrix, Sarah Hood, is the life-tenant under the will. By the eighth paragraph of that instrument, all the residue of her estate is bequeathed and devised by the testatrix as follows : One-fifth thereof to each of her children for life, and at their respective deaths to their respective descendants *per stirpes*. Therefore it would seem to be clear in the first place that it was the privilege as well as the duty of the executor, or of any of the parties interested, to apply to the Orphans' Court for authority to invest the fund and make such disposition

of it as is required by the will. *Code*, sec. 237, Art. 93 ; *Miller* v. *Williamson*, 5 Md. 219 ; *Evans* v. *Iglehart*, 6 G. & J. 171 ; *State, &c.*, v. *Robinson*, 57 Md. 495 ; *Siechrist* v. *Bose*, 87 Md. 295. In the case last cited, where the fund consisted of money which was bequeathed to one for life and then to her children, it was said that while " the funda-mental idea that underlies the rulings of the Court, as well as the main design of the statute, is the preservation of the fund, so as to secure it to those who under the will shall be thereafter entitled to it," yet that where, as here, the will imposes no necessity upon the executor to retain the fund or to secure and pay the interest to the life-tenant, the only duty of the executor is to invest the fund if not already in-vested, in accordance with the will or the order of the Orphans' Court. The order which directed the mortgage to be released and the mortgage debt to be invested in a second mortgage, also distributed the fund so secured to Mrs. Buck as a portion of the residuary estate given to her for life and at her death to her children. Under these cir-cumstances, in the absence of fraud, *Siechrist* v. *Bose, supra*, is, in our opinion, conclusive of this case. In delivering the opinion of the Court in that case, PAGE, J., said : " In this case it was the duty of the executors to invest the fund in accordance with the directions of the Orphans' Court, and when so invested, no right remained in the executors to re-tain it. The bequest was to Mrs. Siechrist for life ; the tes-tator intended it should be her property for that period; she, therefore, was entitled to have possession of it for that period, on such terms as would protect the interests of those who were also interested in the fund. What she did with it after she received it was a matter that could not con-cern any one else than those who were to take the fund at her death. If her treatment of it was such as to jeopardize its safety, a Court of Equity on proper application has full power to require such security to be given as might be needed. The executors fully discharged their duty in mak-ing the investment according to the requirement of the

order of Court. They were acting, in so doing, under the authority of a Court of competent jurisdiction, and are, therefore, now fully protected by its order. When the investment was made, and the allowance therefor had passed the Court, the estate, so far as this fund was concerned, was fully administered, and all rights of the executors over it terminated."

And it seems to us that our conclusion in this case must be that when the executor under the will of Mrs. Hood had, under the order of the Court, invested the mortgage debt as thereby directed, and after the fund so invested had by the same order been distributed to Mrs. Buck for life and then to her children, Mrs. Hood's estate, as to this fund, was fully administered, and her executor had no further duty to perform in relation to it—and that here, as in *Siechrist* v. *Bose*, the duty of protecting the fund was upon the life-tenant and not upon the executor. Inasmuch, however, as the fund was invested in a second mortgage on the farm of the husband of the life-tenant; it is not surprising that she did not insist upon the payment by the executor of her distributive share of her mother's estate, or that she joined her husband in asking the Court to postpone the mortgage which secured her distributive share in favor of the Gaither mortgage, which enabled her husband to borrow the sum of $3,000 to satisfy judgment creditors. She was thus enabled to preserve a home for her husband, herself and their children. It is fortunate, however, that the rules of law, as well as the ordinary rules of fair dealing and good faith will not allow those who were benefited by the money advanced to them under the Gaither mortgage, now to repudiate its binding force. The fact, therefore, that the investment, which, when it was made, is shown to have been a good one eventually proved unwise, the property having depreciated to such an extent as to sell for less than the first mortgage debt, interest and costs, while a misfortune, affords no valid reason for impeaching the order.

*Decree affirmed.*

(Decided November 24th, 1899).