HARRIET E. SMITH et al. vs. ANNIE F. MICHAEL.

*Testamentary Direction That Executor Shall Hold Fund for Life Tenant and Pay Principal to Remainderman—Jurisdiction of Equity Over Administration of the Fund—Requirement of Bond from Executor.*

A testator gave the residue of his estate to his executors with directions to invest the same, pay the income to his wife for life and at her death to divide the property between his two children. Code, Art. 93, sec. 10, provides that whenever under the provisions of a will it is necessary for an executor to retain any part of the personal estate, as where money is directed to be paid at a distant period, or upon a contingency, a Court of Equity or the Orphans' Court shall have the power, on the application of the executor or of a party interested, to decree or give directions thereto. *Held,* that this statute is applicable in this case; that the executors ought to have applied to the Orphans' Court or to a Court of Equity for directions as required by the statute, and that since they failed to do so, a remainderman, as a party interested, has the right to apply to either of those Courts, and having filed a bill in Equity, it was the duty of that Court to assume jurisdiction.

*Held,* further, that upon taking jurisdiction, a Court of Equity has the power to require the executors to give bond, although by the terms of the will a bond was not made necessary.

*Held,* further, that since the will directs the property to be held and invested by the executors as such the Court is not authorized, except under special circumstances which do not exist in this case, to direct them to hold the fund as trustees.

The provisions of Code, Art. 93, sec. 10, directing that whenever it shall be necessary for an executor to retain in his hands any part of the personal estate after the discharge of all claims, a Court of Equity or the Orphans' Court shall have the power to give directions therefor, may be applica-

ble when a legacy is given for life with remainder over after
the death of the life tenant; and whether it does apply in
such cases generally depends upon whether by the terms of
the will or of necessity the personal estate bequeathed must
remain in the hands of the executor. If it is so to remain,
then the section does apply, but if it is simply to be invested
and then distributed to the tenant for life to be held under
the terms of the will, the statute ordinarily does not apply.

Independent of the Code, Art. 93, sec. 10, when the property
bequeathed to one for life consists of money, it is the duty
of the executor to invest the same in some productive fund,
most properly under the direction of the Court, so that the
income may be received by the legatee for life and the prin-
cipal at his death may be received by the legatee in remain-
der.

*Decided March 31st, 1910.*

Appeal from the Circuit Court for Harford County (VAN
BIBBER, J.).

The decree of the Circuit Court stated that this Court
hereby assumes jurisdiction over the trust created by the
last will and testament of James Smith, deceased, in favor of
the defendant Harriet E. Smith for life with remainder over
in equal shares to the complainant and to the defendant Wil-
liam A. Smith, a copy of which said will is filed in those pro-
ceedings; and it is further

Adjudged, ordered and decreed that the defendants, Har-
riet E. Smith and William A. Smith, be and they are hereby
appointed trustees to hold the fund distributed to themselves
as executors by their second account passed in the Orphans'
Court of Harford County on the 9th day of September, in the
year 1908, and that before they proceed to act as such trustees
they shall file in this Court a bond with sureties to be ap-
proved by this Court or the clerk thereof for the faithful dis-
charge of their trust in the penalty of thirty-three thousand
dollars; and it is further

Adjudged, ordered and decreed that the said defendants as executors of James Smith within sixty days from the date hereof, file in this Court a detailed statement of the funds in their hands as aforesaid, and where and how the same are invested, with such description of the investments and their sufficiency for the security of the sums so invested as will enable an examination thereof and a determination of the sufficiency of said investments, and that said executors forthwith account with and turn over to themselves as trustees under this decree all funds belonging to said estate.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Isidor Rayner* and *John L. G. Lee,* for the appellants.

*Thomas H. Robinson* (with whom were *Stevenson A. Williams* and *Joseph W. Chamberlain* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal by the executors of the last will and testament of James Smith, deceased, from a decree of the lower Court taking jurisdiction of the estate, appointing them trustees, requiring them to give bond and account in that Court, and to turn over to themselves as trustees the funds belonging to the estate. The testator, after leaving his farm to his wife for life and after her death to his daughter, the appellee, and giving the personal property on the farm to his wife absolutely, made the following provision in his will: "Item—All the rest and residue of my estate real, personal and mixed which I now hold or may hereafter acquire I will and direct shall be held by my executors hereinafter named and kept safely and profitably invested in good interest-bearing securities, mortgages or otherwise as they may deem best and the interest thereon to be paid over to my said wife Harriet E. Smith during her life and after her

death the whole amount thereof with any interest then due
thereon to be equally divided between my two children Wil-
liam Alexander Smith and Annie F. Michael share and share
alike."

Mrs. Michael filed a bill in equity in which she set out the
provisions of the will and alleged that the executors qualified
and filed an inventory showing that the entire personal estate
amounted to $28,542.75, of which $902.75 represented the
personal effects specifically devised to the widow; that they
had settled an account showing a balance in their hands of
$26,356.19, which was according to the account turned over
to the widow for life. It is then alleged that under the will
the property on the farm, appraised at $902.75, and one-
third of the residue belonged absolutely to the widow, and the
balance, $16,968.96, was to be held by the executors and in-
vested as provided in the will—the interest to be paid to the
widow during her life, and at her death to be divided between
her and her son William A. Smith. It then states that she is
advised that the said sum of $16,968.96 is held by the execu-
tors in trust, and that the said trust should be administered
under the orders and direction of the Court and a trustee or
trustees to be appointed.

A demurrer to that bill was filed and sustained, but the
Court retained jurisdiction and granted leave to the plaintiff
to amend the bill. An amended bill was filed, in which it
was also alleged that it was the duty of the defendants to
have applied to the lower Court, or to the Orphans' Court,
for directions with reference to the administration of the
trust, but they failed and neglected to make such application;
that they had ignored the plain directions of the will in dis-
tributing the whole fund to the widow for life; that the action
of the said defendants in causing such a distribution of the
estate has grown out either of ignorance or design, and is
liable to cause confusion and possibly to make litigation nec-
essary on the part of the plaintiff to protect her rights; that
the defendants, instead of investing said estate with such ear
marks as to make its identification easy and possible, have

been investing the same in the name or names of one or the other of them as individuals; that when said executors have fully administered said estate in their capacity of executors it should be paid into the hands of a trustee. It then goes on to allege that the plaintiff apprehends and therefore charges that the assets of said trust are in danger of being lost, wasted or misappropriated.

After an answer was filed and testimony was taken, the lower Court passed a decree assuming jurisdiction over the trust, appointing the executors trustees, to hold the fund distributed to them by the second account, requiring them to give bond in the penalty of $33,000.00, and to file a detailed statement of the funds in their hands showing the investments, etc., and ordering that the "executors forthwith account with and turn over to themselves as trustees under this decree all funds belonging to said estate."

After the demurrer to the original bill had been sustained, and before the amended bill had been filed, the executors filed the second account spoken of above in the Orphans' Court, in which they were allowed for the personal property turned over to the widow ($902.75) and one-third of the residue ($8,484.48) left the widow absolutely—showing a balance of $16,968.96. It is stated in that account that the balance was to be held by them during the life of said Harriet E. Smith, that the income was to be paid to her and after her death to be equally divided between the son and daughter, and it also states that "their first account was in error in stating that the fund of $26,356.19 was turned over to the widow for life which was not, and never had been done."

The Court below was of the opinion that Section 10 of Article 93 of the Code was applicable, and as that is strenuously denied by the appellants, we will at once consider that question. It begins by providing that: "Whenever, under the provisions of a will, it shall be necessary for an executor or an administrator *cum testamento annexo* to retain in his hands the personal estate, or any part thereof, after all just claims are discharged, as where money or some other thing is

directed to be paid at a distant period, or upon a contingency, any Court of Equity in the city or county, or the Orphans' Court shall have the power, on the application of such executor or administrator, or of a party interested, to decree or give directions thereto; and it shall be the duty of such executor or administrator to apply to the said Court of Equity or the Orphans' Court." It then goes on to give the Court to which application is made certain powers over it. Unless the provisions in the will, providing for the investment by the executors, etc., prevents we can see no reason why this section does not apply to this case. It is certainly necessary for the executors to retain in hand the personal estate left after all just claims (including the widow's) are discharged, and if that provision in the statute is to be limited by the clause, "as where money or some other thing is directed to be paid at a distant period, or upon a contingency," the expression must receive a reasonable construction. It does not necessarily mean a fixed distant period, and if a will in express terms or by necessary implication, requires the executors to hold the property during the life of a tenant for life, it is difficult to understand why the section does not apply. A life tenant may live for twenty, thirty or more years—until a very distant period. It was said in *Gunther* v. *State,* 31 Md. 30: "It is obvious the main design of the section, and the object to be attained by the exercise in every case of the power thus conferred, is the preservation of the fund so as to secure it to those who, under the will, or by law, shall be entitled to receive it upon the arrival of a prescribed period, or the happening or non-happening of the designated contingencies."

There may be some apparent conflict between the cases in this State as to the application of the law embraced in this section, but they can be easily reconciled when the facts which controlled those decisions are considered. It may be well to examine some of them. In *Gunther* v. *State, supra,* there was a legacy of $2,000.00 to an adopted son of the testator, "should he attain the age of twenty-one years." In that case a guardian was appointed for the minor, and the Orphans'

Court passed an order empowering the administrator *c. t. a.* to transfer the legacy to the guardian. The Court said: "It is made *the duty* of the executor or administrator having the money or property in hand, to apply to the Court for direction in the premises, and on such application the Court is clothed with *'full power to decree or direct in what manner it shall be disposed of,'* to effect the contemplated purpose; but the *mode* or disposition for safe keeping and security is not prescribed, but left, in each case, to the sound discretion and judgment of the Court." It went on to say: "We have no doubt the simpler, better if not safer practice in all cases to which the section under consideration applies, would be to order the executor or administrator himself to retain the funds, and invest them in some safe security to be designated by the Court, but we are not prepared to say the mode here adopted is wholly without sanction of law, and the order in question utterly void for want of jurisdiction in the Court to pass it." It held that payment to the guardian under the order relieved the administrator's bond from further liability.

In *Reiman* v. *Peters,* 2 Md. 104, it was said that a bequest of an annuity to a widow during the term of her natural life. "if she so long remains my widow, but not otherwise," came within the operation of this section. In *Brady* v. *Brady,* 78 Md. 461, the bequest was to the widow for and during her natural life, with power to receive, take and collect the rents, issues and profits, and after her death to pay a legacy of $16,000.00 to the testator's son. The Court held that the administrator *c. t. a.* should have invested the estate, or have retained the investment as made, if safe and reliable, so as to secure the issues and profits to the widow for life and the principal after her death, to pay the son's legacy. It was then added: "If the administrators had complied with the provisions of Article 93, section 10 of the Code, they would have found complete protection, and have followed the plainly expressed intention of the testator." In that will it was provided that the $16,000.00 to be paid to the son three years after the death of the testator's wife, and other provisions

looking to that payment showed that the administrators were to hold the property and pay the legacy after the life estate had expired.

In *State* v. *Hewlett,* 48 Md. 138, the testator gave the residue of his estate to James W. Hewlett in fee, upon the condition that he should pay Jack Q. Hewlett, the sum of $5,000 upon the arrival of the latter at the age of twenty-five years, and that sum was declared to be a lien or charge upon the residue of the estate, so given to James W. Hewlett. The Court held that section 10 of Article 93 had no application. CHIEF JUDGE BARTOL, in speaking for the Court, said: "Without quoting the words of the section at length, it is sufficient to say that it applies only where by the will, 'money or some other thing' is directed to be paid at a distant day, or upon a contingency, and where in the meantime, *the legacy* is not *disposed of, but must, by the terms of the will, or otherwise, remain in the hands of the executor, or the administrator c. t. a.*" He then went on to say that the will did not direct that the residue, or any part of it, should remain in the hands of the executors. That case was manifestly not within this section, as the executor was not required to hold either money or property for the benefit of Jack Q. Hewlett, but the residue of the testator's estate was to be turned over to James W. Hewlett, subject to the charge in favor of Jack Q. Hewlett.

The case of *State* v. *Robinson,* 57 Md. 486, is somewhat peculiar, and differs in some important particulars from some later cases where different results were reached. The testator gave to his wife absolutely the household furniture and fixtures, the cash on hand and the bills receivable of which he died seized, and gave to her a leasehold house and lot on Hollins street and two leasehold lots on Baltimore street, in the City of Baltimore, together with the improvements, rents, issues and profits thereof during her life. He sold the Baltimore street property in his lifetime, and a part of the purchase money which remained due at his death was collected by the executors and invested in United States bonds. The Court held that the purchase money so collected passed

to the widow, under the term "bills receivable of which I shall die possessed," but that the executors' bond was liable for the proceeds of sale of the Hollins street property, which sale was made by them under an order of the Orphans' Court. Those proceeds of sale were *not invested* by the executors, but they charged themselves with them. If they had invested them, and distributed the investments to Mrs. Gregory for life, then another question would have arisen, for, although it is not discussed in that case, the principle we refer to has been distinctly announced in later cases.

In *Siechrist* v. *Bose,* 87 Md. 284, the testator bequeathed to Margaret Bose a sum of money for life and after her death to be divided equally among her children then living. The executors filed a petition in the Orphans' Court in which, after stating their readiness to pay the said legacy, they prayed for an order directing them to invest the money "so as to meet the requirements of said will and protect the interest of all the parties interested therein." An order was passed directing the executors to invest the sum in United States, State or City stock in the name of the legatee for life, subject to the provisions of the will. The executors stated an account in which they were allowed credit for the amount "invested under an order of the Orphans' Court * * * for the benefit of Margaret Siechrist for life * * * and subject to the provisions of the will of the decedent."

Subsequently the life tenant obtained an order from the Orphans' Court authorizing her to surrender a certificate of Baltimore City stock, which had fallen due, and receive the money. She received the check of the city, but the record does not show that she ever reported the transaction or re-invested the money. The remaindermen prayed the Orphans' Court to require the surviving executrix to show how the legacy was invested, if invested, to bring the investment into Court, and if not, to bring the money into Court. The answer alleged that the sum had been fully administered, and as surviving executrix she had no further concern in it. The Court dismissed the petition and an appeal was taken to

this Court. In considering the question after quoting from *Evans* v. *Iglehart,* 6 G. & J. 196, and citing *Wooten* v. *Burch,* 2 Md. Ch. 196, and *State* v. *Robinson, supra,* we said that section 10 of Article 93 "seems to be an application of the general principle, just stated, to cases where it is necessary for the executor to retain in his hands the personal estate or any part thereof, 'as where money or some other thing is directed to be paid at a distant period or upon a contingency.' " And again, after saying that the *Hewlett case* was held not to be within section 10, "because the will in terms or by implication *did not require that the fund should remain in the hands of the executor,* but was expressly bequeathed to James," and after quoting at length from *Gunther* v. *State, supra,* we said: "But we do not think the provisions of section 10 of Article 93 apply to this case. Those are applicable, as already has been said, to cases where the money or some other thing is to be paid at a distant day or upon a contingency, *and must either by the terms of the will or of necessity remain in the hands of the executor."* The opinion went on to show that the will imposed no necessity upon the executor to retain the fund or to secure the payment of the interest to the legatee for life. It was held that it was the duty of the executors to invest the fund in accordance with the directions of the Orphans' Court and when so invested no right remained in the executors to retain it; that "the bequest was to Mrs. Siechrist for life; the testator intended it should be her property for that period; she therefore was entitled to have the possession of it for that period, on such terms as would protect the interests of those who were also interested in the fund. What she did with it after she received it was a matter that could not concern anyone else than those who were to take the fund at her death. If her treatment of it was such as to jeopardize its safety, a Court of Equity on proper application has full power to require such security to be given as might be needed." The cases of *Myers* v. *Safe Deposit Co.,* 73 Md. 413, and *Oesterla* v. *Gaither,* 90 Md. 40, are to the same effect.

. We have thus made more citations and quotations from
cases in this State than is usual, because of the apparent mis-
understanding as to what the law is on the subject before us,
and because it is always important that fiduciaries under-
stand their rights and obligations.   The following conclusions
may be drawn from previous cases and from what we have
said:

1. Independent of Article 93, section 10, "where the sur-
plus bequeathed for life consists of money or property whose
use is conversion into money, it is the *duty* of the executor to
*invest* the same in some productive fund, or it must be put
on adequate securities, and most properly under the direction
of the Orphans' Court, or a Court of Equity, so that the divi-
dends or income may be received by the legatee for life and
the principal after the death of the legatee for life, may be
received by the legatee in remainder."   *Evans v. Iglehart,
supra; Wooten* v. *Burch, supra,* quoted with approval in
*State* v. *Robinson, Siechrist* v. *Bose,* and other cases.

2. Section 10 of Article 93 may apply to a legacy for life
with remainder over at the death of the life tenant, and
whether it does apply in such cases generally depends upon
whether by the terms of the will, or of necessity (in order to
carry out the intention of the testator as shown by the will),
the personal estate or the part thereof so bequeathed must re-
main in the hands of the executor or administrator, *c. t. a.*
If it is to so remain, then the section does apply, but if it is
simply to be invested and then distributed to the tenant for
life to be held under the terms of the will, then ordinarily it
does not apply.   The cases of *Reiman* v. *Peters, Gunther* v.
*State,* and *Brady* v. *Brady,* above cited, are illustrations of
when it does, and those of *Myers* v. *Safe Deposit Co., Siech-
rist* v. *Bose,* and *Oesterla* v. *Gaither,* of where it does not ap-
ply, and some of the quotations above from *Siechrist* v. *Bose*
show the distinction.

As the will now under consideration in terms directs the
executors to hold, safely keep and invest this residue, and to
pay over to the widow the interest thereon during her life,

and after her deah to divide the principal, together with any
interest then due, between the son and daughter of the testa-
tor, we can have no doubt, under our construction of it, that
section 10 of Article 93 of the Code does apply to the fund in
question, and the executors ought to have applied to the Or-
phans' Court or to the lower Court for directions as required
by that statute. Having failed to do so, the appellee, as a
party interested, had the right to apply to either of those
Courts, and having selected a Court of Equity, that Court
had the right, and it was its duty to assume jurisdiction.

We do not mean to hold that the lower Court has the power
to wholly ignore the terms of the will, but in so far as they
can be safely complied with, they should be followed. When
the statute says the Court shall have power to decree or direct
"what part of the personal estate shall be retained or appro-
priated for the purpose, and in what manner it shall be dis-
posed of," it, of course, refers to cases where only a part of
the personal estate is to be so held, and does not mean that it
should be disposed of in a manner contrary to a will which
makes provision for its disposition. When however, the will
provides, that no bond be required of the executor and one
was accordingly given for only such penalty and conditions as
are required by section 40 of Article 93, but circumstances
arise which in the judgment of the Court require a new one
to be given with a greater penalty and other conditions, we
think a Court of Equity, after having taken jurisdiction of
the estate, has the power to so require. The presumption is
that the testator knew that an additional bond might be re-
quired, and indeed it may be assumed that he expected the
Court having charge of the fund to do what it deemed neces-
sary or proper to protect it.

Although we find nothing in this record to justify a sug-
gestion or belief that these executors were intentionally
guilty of any wrongdoing, the fact is that when the original
bill was filed, they had settled an account *in pais* by which
they credited themselves with "balance in hands of executors
turned over to widow for life under will, $26,356.19," the

widow being one of the executors. It was doubtless owing to a misunderstanding of their duty in the premises, but under the law it was *their* account, and they are legally responsible for the mistake. Such a mistake might result in serious loss to remaindermen—when there is no bond for their protection—and such a serious mistake made by them may well suggest the danger, not to say probability, of their making others, unless directed by a Court which had power to direct them, and we can not say there was no danger of the estate or some part of it being lost. A number of the mortgages were in the individual name of Mr. Smith, and were only assigned to the executors the day the testimony was taken, and while that may not be sufficient to justify the charge that any part of the estate had been wasted (*State* v. *Cheston,* 51 Md. 352), it does show that the executors deemed their individual responsibility sufficient to protect the estate, which is not what parties interested in estates are required to rely on. So, although we have no reason to believe from the record that the executors were not thoroughly honest, and were not acting as they supposed they had the right to act, there were circumstances which justified the Court in requiring a bond to be given, to which the appellee, or anyone interested, could look instead of merely to the personal responsibility of the executors. It is unfortunate that such differences should arise between members of a family—especially as they might readily have been avoided by more consideration being shown to each other by the appellee and her brother, but Courts must deal with cases as they find them. The course pursued by the appellee was not necessarily a reflection upon the integrity of the appellants, and it will be better for all parties to have the benefit of the direction and protection of a Court of Equity— especially if their unfriendly relations continue. Of course restating the account after the original bill was filed, and the Court of Equity had taken jurisdiction, cannot affect the right of the appellee to have the estate administered by the Court of Equity instead of by the Orphans' Court. Nor can an offer by the appellants to turn over one-half of the fund to

the appellee oust the jurisdiction of the Court, or require her to accept it before it is due under the will.

From what we have said, it will be seen that in our judgment the Court below was right in taking jurisdiction and requiring a bond, but we are of the opinion that there was error in appointing trustees. It is true those who are executors are named as trustees, but the decree in effect removed them as executors. The statute does not contemplate or authorize that, but on the contrary means that the executors shall act unless there be some peculiar circumstances which justify the Court in appointing trustees. The will directs that the residue should be held by *the executors,* and kept safely, and profitably invested in good interest-bearing securities, as *they* (the executors) may deem best. Without prolonging this opinion by a further discussion of that subject, some of the cases we have already cited show such to be the case. Among others are *Reiman* v. *Peters, State* v. *Robinson, Brady* v. *Brady* and *Siechrist* v. *Bose.* There may be some circumstances which authorize the Court to direct the fund to be paid over to another by an executor or administrator *c. t. a.,* as was done in *Gunter* v. *State,* but in this case the will clearly contemplates that the executors, as such, act. We might say, as was said in *Reiman* v. *Peter*: "These acts are to be performed by them in the *capacity of executors."*

It follows that the decree must be reversed in part, and affirmed in part, and the cause remanded so that a new decree may be passed in accordance with this opinion. We will under the circumstances direct that the costs be paid out of the fund.

> *Decree reversed in part and affirmed in part, and cause remanded in order that a decree may be passed in accordance with this opinion, the costs to be paid out of the fund.*