(Decided 26th June, 1878.)

ROSALIE C. OGLE *vs.* HENRY A. TAYLOE and THOMAS T. MUNFORD.

*Construction of a will—Bequest of the use of a room in testator's house, and question as to the right of the legatee to a Commutation in money for its use—Testimony irrelevant and inadmissible under the allegations in the bill—Charge of legacy on land—Question as to liability of the Purchaser to pay interest on the legacy where the evidence showed that the devisee of the land was not liable because of the relations between him and the legatee—Notice to the purchaser of the Existence of the lien—Waiver—Estoppel—Statute of limita-*

Ogle *vs.* Tayloe and Munford.

*tions not applicable to legacies—Laches—Claim subject to equities—Reciprocal benefits Cancelling current obligation:— Claim in rem and in personam—Subrogation.*

A testator by his will gave to his daughter R. C. O. any room she might choose to occupy in his dwelling house during her single life. After his death the house was sold subject to the right of R. C. O. to a room therein under the will. On a bill filed by R. C. O. against the purchasers claiming a sum of money in commutation of her right to the room, the proof failed to sustain the allegation of the complainant as to her inability to occupy the room; and it appeared that the legal possession of the room was still in her, that she left a part of her furniture in it, and retained the key, and left the house because she could not remain without her brother, and with disagreeable people in the house, the managers of the defendants. HELD:

That for the reasons stated in the case of *Meakin vs. Duvall,* 43 *Md.,* 378, the complainant was not entitled to a money commutation for the use of the room.

The complainant offered evidence that she left the house and surrendered her room to the defendants on an agreement made with them to submit the valuation of the room to referees, and on the undertaking by the defendants to adopt such valuation as the referees might find. This evidence being excepted to for specified reasons, it was HELD:

That although the reasons of their exceptions might not be tenable, yet there being no allegation in the bill relying on the agreement and award as a ground of relief, or any averment in relation thereto, either in the bill or answer, testimony on that subject was incompetent and inadmissible because irrelevant to any issue in the cause.

Whether a legacy is a charge on real estate is a question of intention, and the more recent authorities determine that words which charge debts upon the realty, will have the same effect as to legacies.

The testator by his said will devised and bequeathed to his wife during her her natural life all his personal estate, (excepting as thereinafter mentioned,) and all the real property of which he died seized, and after her death the said land and personal property to be equally divided between his sons R. L. O. and G. C. O. to them and their heirs in fee simple, &c. The testator further gave and bequeathed to the complainant the sum of three thousand dollars to be paid to her by her said brothers R. and G. each paying one-half of the said sum upon getting into possession of the property thereinbefore bequeathed them. After the death of the widow the testator's real

Ogle *vs.* Tayloe and Munford.

estate was divided into two parts, that part containing the mansion being assigned to G. C. O. and the complainant resided with him until the year 1871, when the real estate of G. C. O. was sold under proceedings instituted against himself and his wife, and was purchased by the defendants. The complainant in her said bill alleged that the said G. C. O. was insolvent, and had never paid her any part of the one-half of the legacy of $3000 bequeathed to her, and that the sum of $1500 with interest remained due to her, less a sum of $1500 paid in part thereof by the defendants since their purchase, and claimed that the same was a lien upon the land purchased by them, and asked that said lien might be enforced by a sale. HELD:

1st. That the provision in the will requiring the legacy to be paid by the testator's sons on their getting into possession of the property thereinbefore *bequeathed* to them, did not restrict the charge to the personal estate.

2nd. That the legacy was a charge upon the property purchased by the defendants.

3rd. That as the will was the foundation of G. C. O's title and interest in the lands purchased by the defendants, and was referred to in the advertisement of sale, they must be considered as having notice of the charge imposed by the will on the lands devised.

The trustee by his advertisement notified the bidders that the sale would be subject to any right which might exist under the will of the testator in favor of Miss R. C. O. of a room, &c.; and the payment of fifteen hundred dollars. The complainant was no party to the proceedings under which the lands were sold, and did not appear to have any personal knowledge of the sale or any participation in the result beyond her demand of the $1500, and the acceptance of the check of the defendants for the sum of $1500 payable to her order and endorsed by her. HELD:

1st. That these acts could not be regarded as a waiver of any antecedent rights *per se.*

2nd. That whether she was advised of her rights or acted in ignorance of them, the demand and acceptance unexplained constituted no estoppel.

3rd. That legacies are not barred by the Statute of Limitations, nor had there been such laches in this case, considering the relations of the parties, as should preclude the complainant from asserting her right.

4th. But the complainant's claim being only cognizable in equity should be subject to all the equities which would exist between her and the devisee of the land.

The complainant's brother testified that he never paid his sister a cent of principal or interest, but he further stated that "she lived with witness but

Ogle *vs.* Tayloe and Munford.

never paid any board; witness never asked her board; there was never any understanding between us she was to pay board, nothing was ever said between us with reference to her board, she never asked me for a dollar in her life.'' HELD:

1st. That such reticence between a brother and sister for a long course of years on a subject of such importance to both, could only proceed from a mutual consciousness that reciprocal benefits cancelled all current obligations between them.

2nd. That the claim in this case was both *in rem* and *in personam;* the charge on the land was an incident to the claim on the person, and the one could not exceed the other.

3rd. That the defendants if liable at all were liable as owners of the land charged by the will.

4th. That the amount of their liability depended upon the mutual dealings between the brother and sister who occupied the farm, and the defendants being substituted by equity to the liabilities of the late proprietor should be subrogated to all his rights.

5th. That the complainant was not entitled to interest on the claim of $1500 since she became an inmate of her brother's family, and while she remained such.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The bill in this case was filed by the appellant on the 8th of October, 1872. The nature of her claims is stated in the opinion of the Court, which also sufficiently sets forth the facts. The disposing part of the will of Benjamin Ogle, the father of the complainant, is as follows:

"2nd. After my funeral charges and other just debts are paid, I will and devise all my household furniture and plate, silverware of every description, to my beloved wife, Anna Maria, to dispose of by gift during life, or by will, to any person she thinks proper.

"3rd item. I give and bequeath to my daughter, Rosalie Caroline, the choice of a maid servant from among all my negroes and any room she may choose to occupy in Bel Air house during her single life.

11                                   v. 49.

"4th item. I give and devise unto my wife, Anna Maria Ogle, during her natural life (to have entire control and do with as she thinks best) all my personal property, negroes, and all kinds and sorts of personal estate, excepting such as may herein be otherwise disposed of, and also during her natural life, I give and devise unto her all my real property of which I die seized, being about fourteen hundred acres ; and at her death it is my will and desire, and I hereby will and devise after her death, the said land and negroes and other personal property to be equally divided between my sons, Richard Lowndes Ogle and George Cooke Ogle, to them and their heirs in fee simple, each to have his share after an equal and fair division may have been made, and in the division reference shall be had not to the number of acres, but to the value that one part may bear to the other, so that one portion, though containing more acres, shall be no more valuable than the other portion ; and it is my will and desire that my son, George Cooke Ogle, shall have that portion on which my mansion house stands.

" Item. I give and bequeath unto my daughter, Rosalie Caroline, the sum of three thousand dollars, to be paid to her by her brothers, Richard and George, (each paying one-half the said sum upon their coming into possession of the property hereinbefore bequeathed them.) It is my desire, and I hereby direct, that either of the said brothers, or any other person she may select, shall be a trustee for her benefit, to whom the said three thousand dollars shall be paid, and by whom the said sum shall be held in trust for the benefit of the said Rosalie and her heirs."

The complainant having given in evidence an agreement to refer to arbitration the valuation of her interest in the room, given to her by the will, marked Exhibit B, and an award made thereunder marked Exhibit C, the defendants excepted to the admission of said exhibits and the testimony of certain witnesses in reference to the same for the following reasons :

1st. Because the said Exhibit B being the alleged award of William B. Hill and Richard Wootten, as referees, is not binding on the defendants, the said referees not having given any notice to the defendants or any of them, of the time and place appointed by them to hold a meeting, and arbitrate the matter submitted to them for arbitration, and not having given the defendants or their attorneys any opportunity to appear before them, or have their proof before said referees.

2nd. Because the said agreement for submission to arbitration was repudiated and rejected before the alleged award of the said William B. Hill and Richard Wootten, as referees, was made.

The Court below (MAGRUDER, J.,) passed a decree dismissing the bill. From this decree the complainant appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*James M. Munroe* and *Frank H. Stockett,* for the appellant.

It is assumed that it will not be controverted, that the bequests so made to the appellant, are charges on the land received by Dr. Ogle under the will, and were liens on it, as well in his hands, as in the hands of all persons claiming under him. *Meakin vs. Duvall,* 43 *Md.,* 378 ; *Tolson vs. Tolson,* 10 *G. & J.,* 159; *Crawford vs. Severson,* 5 *Gill,* 443.

It is equally clear that the appellant had, as against all the world, the right to the room so selected, as and for her home in the mansion house, during her single life, and it is proved she has never married. This right will so be construed and enforced by the Courts, as most likely to carry out the objects and intention of the testator as conducive to the comfort of the devisee, and will support it

164          MARYLAND REPORTS.

by every reasonable intendment.    *Parsons vs. Winslow,* 6
*Mass.,* 169 ; *Edens vs. Williams,* 3 *Murphy,* 27 ; *Holme
vs. Harrison,* 2 *Whart.,* 283 ; *Hunter's Adm'r vs. Stem-
bridge,* 12 *Geo ,* 192 ; *Wusthoff vs Dracourt,* 3 *Watts,* 240.
*Willett vs. Carroll,* 13 *Md.,* 459 ; *Donnelly vs. Edelen,* 40
*Md ,* 117 ; *Meakin vs. Duvall,* 43 *Md.,* 372.

In the case of *Meakin vs. Duvall,* 43 *. Md.,* 372, the
Court decided that the devisee in a case very similar to the
present, could have the provision made for her by the will
for a home, commuted into a money charge, if the defend-
ant had deprived her of, or hindered her, in the reasonable
enjoyment of such provision in the mode declared by the
testator.    Can there be a doubt that such was the case now
before this Court.

How was it possible for her to enjoy such provision, in a
house occupied by strangers, and still more alien to her by
their habits and station in life, as is shown by the proof in
this case ?

Besides it was manifestly the intention and expectation
of the testator, that this provision made for his daughter's
comfort, was to be enjoyed in the family and society, and
under the protection of one of his two sons, and to this
expectation, and to no other, the bequest had any value,
and the privation of such protection and society as com-
pletely deprived her of this provision, as if she had been
driven from the house by the defendants or their agents.

Besides, she left the house and surrendered this provi-
sion to the defendants—on the agreement made with them
under their submission of the value of this provision to be
ascertained by Messrs. Hill and Wootten—and on the
undertaking by the defendants " *to adopt such valuation
as these gentlemen may find.*"

This was a solemn contract on their part, to the fulfill-
ment of which, she had right to rely.    She surrendered
therefore to the defendants this provision for a home to her
for a valuable consideration, and her leaving was no *volun-
tary* abandonment of her home.

With great deference to the decision of the learned Judge, whose decision refused relief to the appellant for the residue of her legacy, it seems he must clearly be in error in deciding that the complainant having boarded with her brother, her board must be considered as an equivalent for the interest on the legacy, and would certainly be a set-off thereto. And that the $1500 being paid under the circumstances must be considered as a full satisfaction and adjustment of the legacy.

In the first place, there is not a word of proof that the complainant ever boarded with her brother. On the contrary, he distinctly proves he never regarded her as a boarder, and never charged her with board.

In the second place, it is submitted that not one of the circumstances attending the payment of the $1500 indicates that the sum so paid was ever considered or received by the complainant, or by any one acting as agent for her, as payment in full for her legacy, or that she ever waived or abandoned the interest on the same.

On the contrary, the testimony is that she never executed any receipt for the same—never recognized the payment for any purpose, except *on account*, and always claimed interest as due to her.

Dr. Ogle, in his evidence, states, he never paid to her any part of the principal or interest of the legacy ; that he never charged, or meant to charge her with board, and though she often asked him to pay her the interest on her legacy, he never paid her, because he " never had it to give her." This would seem entirely conclusive on this point, and shows that even as between the appellant and Dr. Ogle, she would be entitled to claim interest on the legacy as well as the principal.

But on what possible ground the defendants could claim by way of set-off against said legacy, an unsettled account between Dr. Ogle and his sister, which had never been assigned to them, and as to which there was no privity, it is impossible to understand.

The right of set-off is a *reciprocal* right, and of *mutual* claims, and such as are in the same right. *Stewart vs. McIntosh*, 4 *H. & J.*, 233; *Hall's Adm'r vs. Creswell*, 12 *G. & J.*, 36; *Annan vs. Houck*, 4 *Gill*, 325; *Milburn vs. Guyther*, 8 *Gill*, 92; *Scott vs. Scott*, 17 *Md.*, 78; *Dowler vs. Cushwa*, 27 *Md.*, 354.

Equitable set-offs are also allowed, and they, in some respects, are more enlarged than set-offs at law under special circumstances. *Smith & Talbott vs. Donnell*, 9 *Gill*, 89; *Trustees German Luth. Ch. vs. Heise & Co.*, 44 *Md.*, 480.

But in allowing set-offs, Courts of equity allow the general rules recognized by Courts of law, and always require that there should be *mutuality* in the demands. 2 *Story's Eq.*, secs. 1436, 1437; *Smith vs. Wash. Gas Light Co.*, 31 *Md.*, 12.

The appellees' claim to a set-off against any part of the legacy, principal or interest, chargeable to Dr. Ogle, finds no sanction in any of the cases which the appellant has been able to find, and is sustained by none of the rules or principles laid down by the writers on this branch of the law.

The intention to charge board, and the liability to pay it by the appellant, could only be a matter of agreement, and a matter of personal right between the parties, and could not, without a transfer, enure to the benefit of a stranger, with whom there was no privity or mutuality.

In any suit between Dr. Ogle and his sister for moneys claimed by her, he might set-off his claim for board, if he could show any board was properly chargeable, and it is not possible that this right, personal to him, could be used and exhausted by a stranger as a defence to a claim chargeable on real estate which he had purchased. Such a claim is as unsupported by law as it is destitute of equity, and the appellant is entitled to claim from the defendants the residue of her legacy, after crediting on the prin-

cipal and interest of it, the sum, ($1500,) already paid to her by the defendants, who, by their answer, show a very just appreciation of her claim against them, and which is only carried to its rational limits, under the aforesaid will of Benjamin Ogle, to wit, the moiety only of said legacy to the complainant—*i. e.*, the sum of fifteen hundred dollars, with interest from the date of the entry, into possession of said land by George C. Ogle.

*Joseph K. Roberts, Jr.* and *C. H. Stanley*, for the appellees.

By a fair construction of the will, the appellant is entitled to no compensation for the room bequeathed to her by her father. This bequest not only clearly comes within the decision of this Court in the case of *Meakin vs. Duvall* but is a much stronger case.

In this case, the complainant is entitled only *to occupy a room* in "Bel Air House," during her single life, and unless hindered or prevented in the enjoyment of that right by the appellees, she is, under the decision of *Meakin and Duvall*, certainly entitled to no compensation in money therefor. *Meakin vs. Duvall*, 43 *Md.*, 372; *Donnelly vs. Edelen*, 40 *Md.*, 117; *Willett vs. Carroll*, 13 *Md.*, 459.

Her own brothers, Richard and George Ogle, both prove that the appellees never prevented her from occupying said room, *but that she removed therefrom of her own free will.* And the appellee, Tayloe, proves that neither of the defendants ever objected to her right to said room, or denied to her free access to the same, and that she and her agents have held the key to the same ever since the defendants came into the possession of said real estate, *and now hold it*.

The appellees also deny that said legacy of $1500 is a proper, legal or equitable charge upon that portion of said *real estate* devised to George C. Ogle. The fifth clause of said will bequeaths to her the sum of $3000, to be paid to

her by her brothers, Richard and George, (each paying one-half said sum) upon their coming into possession of the property *hereinbefore bequeathed them.*

Real estate is never charged with the payment of legacies, unless the intention so to charge it is expressly declared, or is fairly and clearly to be inferred from the terms of the will. *Dugan vs. Hollins,* 4 *Md. Ch.,* 139.

In this case, the intention was evidently to charge the personal estate, for the testator directs that said legacy shall be paid by Richard and George upon their coming into possession of the property bequeathed them.

In speaking of his land he uses the term "devise," showing he knew the legal force and effect of words. And he makes this legacy payable out of property bequeathed, thereby designating the property out of which it should be paid. *Cornish vs. Wilson,* 6 *Gill,* 316, 320 ; *Mitchell vs. Mitchell,* 3 *Md. Ch.,* 71 ; *Simmons vs. Drury,* 2 *G. & J.,* 32.

There was abundant personal estate, out of which she could have been paid. She resided with her brother, knew this money was due her from the time he came into possession in 1856. She could at any time have compelled the payment, but she allowed her brother without demanding the payment, to get behind hand, and never demanded any interest until sixteen years thereafter, and more than a year after the real estate passed into other hands ; and by her own default, she has allowed her only security, the personal estate, to be lost, and there has been on her part such lapse of time and *laches* as does not entitle her to recovery in this case. *Chew, Ex'r of Gibson vs. Farmers' Bank,* 9 *Gill,* 371 ; *Hertle vs. McDonald,* 2 *Md. Ch. Dec.,* 128 and 3 *Md.,* 366.

The learned Judge in the Court below, properly regarded·the board as an equitable set-off to this claim·of interest. There is no dispute that the appellant received her support from this real estate, and paid nothing for it,

and that it would have been a set-off by George C. Ogle. The real estate being encumbered with mortgages, under which the property was sold, and the appellees as purchasers taking all the rights, legal and equitable, are entitled to have the board off-set to her claim for interest.

Where the party seeking the benefit can show some equitable ground for being protected against his adversary's demand, set-off in equity will be allowed. *Polk, &c. vs. Pendleton,* 31 *Md.,* 118 ; *White vs. O'Brien,* 1 *Simons & Stuart,* 551 ; *Rawson vs. Samuel,* 1 *Craig & Philips,* 172 ; 2 *Story's Eq. Jurisprudence,* 1440, 1456.

In *Hawkins vs. Freeman,* which was decided five years before the statute of set-off was passed, the Court of Chancery interfered to enforce this natural equity. 2 *Equity Cases, Abr.,* 10.

The right of set-off does not attach to the debt itself, nor depend upon the mutuality of debts in their inherent quality belonging to such debts, but upon the situation of the parties between whom it is sought to be enforced. It follows the doctrine of compensation. *Waterman on Set-Off,* 19.

The appellees, having no notice at the time of their purchase of the claim of the complainant for any greater sum than $1500, believing the interest had been paid by board furnished to her by Dr. Ogle, and the testimony of Dr. Ogle, showing she paid no board, upon the doctrine of compensation the Court will treat her board, as did the learned Judge below, as an equitable set-off, and relieve the appellees of the great hardship sought to be imposed upon them.

Were this a suit between the complainant and her brother, he would unquestionably claim the set-off, and absorb not only the interest but the principal.

By paying the $1500, the appellees have by no means bound themselves to the payment of the interest claimed, nor waived the objection that no part of said legacy was

a lien.    Having notice of the $1500 claimed by her, they felt in honor bound to pay it, and the appellant being a relative, they were willing to act generously in the premises.

Bowie, J., delivered the opinion of the Court.

The appellant, devisee and legatee of the late Benjamin Ogle, filed her bill in the Circuit Court for Prince George's County, sitting in equity, against the appellees, purchasers of a part of the real estate of the testator, claiming compensation for the right of domicil in the Mansion House of the testator called the "Bel Air House," and the balance of a legacy charged upon the lands purchased by his last will.

The bill alleged, that the father of the complainant, the late Benjamin Ogle, being seized and possessed of a large real and personal estate (the former known by the name of "Bel Air," containing about fourteen hundred acres, on which there was a large and commodious dwelling house, the residence of the testator,) made his last will and testament duly attested to pass real estate, and among other devises and bequests, gave, bequeathed, and devised to the complainant by the third item or clause of his will, the choice of a maid servant from among all his negroes, and *any room she may choose to occupy in Bel Air House during her single life.*

The testator devised and bequeathed to his wife during her natural life, all his personal estate, (excepting as thereinafter mentioned) and all the real property of which he died seized, and after her death, the said land, negroes and other personal property, to be equally divided between his sons Richard Lowndes Ogle and George Cooke Ogle, to them and their heirs in fee simple, etc.

The testator further gave and bequeathed to the complainant, the sum of three thousand dollars, to be paid to her by her brothers Richard and George, (each paying

one-half of the said sum) upon getting into possession of the property thereinbefore bequeathed them. It was also desired and directed by the testator, "that either of the said brothers, or any person she may select shall be a trustee for her benefit, to whom the said three thousand dollars shall be paid, and by whom the said sum shall be held in trust for the benefit of the said Rosalie and her heirs."

The testator died in the year 1844, his widow Anna Maria Ogle entered into possession of his estate, real and personal, and enjoyed it until 1856 when she died. The devisees, Richard and George Ogle, succeeded to the property after the death of their mother, under the provisions of the will, the real estate being divided into two parts, that portion containing the mansion, being assigned to George C. Ogle.

The complainant being unmarried resided with her mother until her death, on the 28th of December, 1856, and since resided with her brother, George C. Ogle, up to 1871, when the real estate, containing the mansion house was sold under a decree of the Circuit Court for Prince George's County, in the case of *Mullikin, Ex'r of Jackson, against George C. Ogle and Wife,* and purchased by the appellees, who took possession and now occupy the same.

The complainant alleges that in consequence of the said sale and possession by the appellees, she is unable to occupy the room devised to her and which she had selected, occupied and enjoyed from the time of her mother's death, and has been obliged to vacate the same.

It is further alleged that George C. Ogle is insolvent, and has never paid the complainant any part of the one-half of the legacy of $3000 bequeathed her, that the sum of $1500 with interest remains due to her, less the sum of $1500 paid in part thereof by the appellees, since their purchase, and the same is a lien upon the real estate purchased by the appellees.

The bill charges " that her claim and right to the occupancy of said room in the mansion, and also her claim for the balance of the legacy, are made liens upon said real estate by the terms of the will, and prays, that a decree may be passed requiring the appellees to pay the amount of both of said claims with interest, and to provide for the future payment of the first mentioned claim &c., and in default thereof, to pass a decree for the sale of said real estate, or so much as may be necessary," &c.

The appellees by their answer, admit the facts alleged in the bill, including the sale and purchase of the lands by them under the decree in the case of *Mullikin, Ex'r vs. Ogle and Wife,* but they deny that in consequence thereof, the complainant has been unable to occupy the room in the mansion house devised to her.  " On the contrary they aver that neither they, nor either of them, have directly or indirectly done anything to hinder or prevent in any manner, the complainant from the full, free and quiet occupation and enjoyment of the same, from the date of the sale to the date of their answer, and they insist that the room in the mansion, heretofore selected and occupied by the complainant, is still in her possession, etc.—that they are still willing the complainant shall use and occupy the said room, fully, freely and uninterruptedly."

Further answering the appellees deny the validity and justice of the claim for the balance of one-half of the legacy of $3000 ; they deny that it is a charge on the said land, aver that they are purchasers without notice as to the existence of any claim in that respect, beyond the sum of $1500, which they insist has been fully paid and satisfied. Testimony being taken under a commission duly executed and returned, the cause was submitted, and the Court below, on the 22nd day of June, 1877, passed a decree, dismissing the bill, from which this appeal was taken.

The questions presented by the record are two-fold.

1st. Is the appellant entitled to a commutation in money for the use of a room in the mansion house at Bel Air?

2nd. Is she entitled to recover from the appellees, the balance due on the legacy of $3000, payable to her by her brother, Dr. George C. Ogle?

As to the first enquiry, in a case recently decided in this Court, arising upon the construction of a devise very similar to the present, it was determined that "a provision of this character is a charge upon the land, not only while it is in possession of the original devisee, but follows it through all subsequent alienations. This is a proposition so well settled as to admit of no further question." *Tolson vs. Tolson*, 10 *G. & J.*, 159; *Willett vs. Carroll*, 13 *Md.*, 459; *Donnelly vs. Edelen*, 40 *Md.*, 117; *Meakin vs. Duvall*, 43 *Md*, 378.

But the right to commutation depends not upon the existence of the easement or service alone, but upon the interruption of its use and enjoyment by those taking the land subject to the burden.

In the case last cited, although this Court held that the devise in question created the charge, yet because the evidence did not show the devisee was in any manner interrupted, prevented or excluded from the use and enjoyment of her privilege, her claim for commutation was denied.

After a careful examination of the evidence in this case, we are unable to find proof of the allegation of the complainant, that in consequence of the sale and possession by the purchasers of the same, she has been unable to occupy the said room and has had to vacate the same.

The testimony shows that the legal possession of the room was still in the complainant, that she left a part of her furniture in it and retained the key, and left the house because she could not remain without her brother, and with disagreeable people in the house, the managers of the defendants.

This aspect of the case has been anticipated and answered by this Court, in the case of *Meakin vs. Duvall*, in the fol-

lowing language, viz., " Unless therefore we are prepared to take the broad ground that this commutation must be made, simply because the property has by their misfortunes passed from the family of the testator into the hands of a stranger, there is nothing upon which this decree can stand."

" But this step we cannot take. However much, loss of property, of relations and friends, and change of circumstances and society, may excite sympathy for those who are unfortunately subject thereto, they cannot be made grounds for infringing legal rights. It is the right of the appellant, (the purchaser in that case,) to discharge the duties imposed on him by this will in the mode prescribed by the instrument itself, and he cannot be deprived of that right and made to pay a money charge without just cause shown. Nor can mere conjecture as to what may happen if the appellee should resume her residence in this house with its present owner, be accepted as safe ground for judicial action. The trial must first be made and the test of experience first applied." 43 *Md.*, 381, 382. We entirely concur with the learned Judge below, in the opinion, that in respect to the use of the room this case is concluded by the decision in the case just cited.

It is insisted by the appellant's counsel, that she left the house and surrendered her room to the appellees, on the agreement made with them under their submission of the value of the room, to be ascertained by Messrs. Hill and Wootten, and on the undertaking by the appellees to adopt such valuation as these gentlemen may find.

Whatever may be the legal meaning, and effect of the agreement referred to, whether it is a submission to arbitration, consummated by a final award as contended by the appellant, or an *inchoate* submission, or invalid award for want of notice, as argued for the appellees, the evidence is excepted to as inadmissible by the latter, and although the reasons of their exception may not be tenable, it is

clear that there being no allegation in the complainant's bill, relying on the agreement and award as a ground of relief, or any averment in relation thereto, either in the bill or answer, testimony on that subject must be incompetent and inadmissible, because irrelevant to any issue in the cause.

The allegations of the bill are, however, inconsistent with the position taken by the appellant's counsel in this respect.

Whether the legacy of three thousand dollars is a charge on the real estate purchased by the appellees, is necessary to be determined before their liability for principal or interest can be ascertained.

All the authorities concede that this is a question of intention, and the more recent determine that words which charge debts upon the realty, will have the same effect as to legacies. 2 *Jarman on Wills*, 525 to 532, *in mar.*, (3rd *Amer. Edition.*)

In this case, the testator had previously devised all his estate real and personal, (except this legacy,) to his wife for life, and after her death to his two sons, in fee, directing *them* to pay the legacy upon their coming into possession of the property hereinbefore *bequeathed* them.

The appellees' counsel contend that the word *bequeathed* relates only to the personal estate, and excludes the real. But we think this is too narrow a construction of the language of the will. The popular sense of the word bequeath includes "devises," indeed the terms are used as synonymous, or equivalent by the lexicographers. *Vide Worcester's Dictionary.*

The property bequeathed to them constituted one fund, and the residue of his estate after the death of his widow. Nothing else existed out of which the legacy could be paid. To confine it to the personalty, would have made it dependent on the use and consumption of the widow, who had an absolute right of disposal by the terms of the will, (" to have entire control and do with as she thinks best.")

From these considerations we think it clear upon authority and reason, that the legacy was a charge on the property purchased by the appellees.

As the will was the foundation of George C. Ogle's title and interest in the lands purchased by the appellees, and referred to in the advertisement, they must be considered as having notice of the charge imposed by the will on the lands devised.

The next inquiry is the extent of the lien to which they were subject.

The trustee by his advertisement notified the bidders, that the sale would be subject to any right which may exist under the last will and testament of the late Benj. Ogle, in favor of Miss Rosalie C. Ogle, of a room in the Bel Air House, during her single life, and the payment of fifteen hundred dollars.

It is said, that the trustee was in nowise the attorney, agent, or representative of Miss Ogle, and had no right to fix the amount of the lien due her.

Miss Ogle was no party to the proceedings under which the lands were sold, and does not appear to have had any personal knowledge of the sale or any participation in the result, beyond her demand of $1500, and the acceptance of the check of the appellees for the sum of $1500, payable to her order and endorsed by her, which acts cannot be regarded as a waiver of any antecedent rights, "*per se.*"

Whether she was advised of her rights, or acted in ignorance of them, the demand and acceptance unexplained constitute we think no estoppel.

Legacies are not barred by the Statute of Limitations, nor has there been such laches in this case, considering the relations of the parties as should preclude the appellant from asserting her right.

But the appellant's claim being only cognizable in equity should be subject to all the equities which would exist between her and the devisee of the land.

Ogle *vs.* Tayloe and Munford.

Although Dr. Ogle declares he never paid his sister a cent of the principal or interest, yet at the same time he says, "she lived with witness, but never paid any board; witness never asked her board; there was never any understanding between us she was to pay board, nothing was ever said between us with reference to her board, she never asked me for a dollar in her life."

Such reticence between a brother and sister, for a long course of years, on a subject of such importance to both, could only proceed from a mutual consciousness, that reciprocal benefits cancelled all current obligations between them. The constant guest could not become the exacting creditor. All accumulation of interest or charges for board were tacitly abandoned.

The claim in this case is both "*in rem*," and "*in personam*." The charge on the land is an incident to the claim on the person, and the one cannot exceed the other.

Although the statutes of Set-off do not strictly apply to cases in equity, yet, the principle has its origin in Chancery, and is often applied.

The appellees in this case, if liable at all, are liable as owners of the land charged by the will. The amount of that lien depends entirely upon the mutual dealings between the brother and sister, who occupied the farm, and the appellees being substituted by equity to the liabilities of the late proprietor, should be subrogated to all his rights.

We think therefore that the appellant is not entitled to interest on the claim of $1500, since she became an inmate of her brother's family, and while she remained such. It follows from what has been said that the decree below should be affirmed.

*Decree affirmed.*