## MARGARET C. LISTER

*v.*

## JOHN R. HARDIN et al.

### [Decided November 15th, 1909.]

1. Where a testator directed his executor to pay his widow, during her life, the income derived from the investment of a certain fund which was set aside for that purpose, a portion of the principal of which was misappropriated by the trustee, and the residuary estate has been distributed to and among the residuary legatees, who are also residuary legatees of said fund, the widow cannot compel such residuary legatees to make good out of what has come into their hands the amount so misappropriated by the trustee, and which should have been paid to her by way of annual payments or income.

2. Where the loss of a fund is due to waste or misconduct of the executor and trustee, he and his estate alone can be looked to. No contribution arises against residuary legatees in such a case.

3. The case of *Trenton Trust Co.* v. *Donnelly, 65 N. J. Eq. (20 Dick.) 119*, distinguished.

On bill.

*Mr. Harry V. Osborne,* for the complainant.

*Mr. Egner,* for the defendants.

STEVENS, V. C.

This case comes up on demurrer to the bill. Complainant is the widow of Edwin Lister, who, by a codicil to his will, provided as follows:

"Instead of the provisions in my will for my wife I give and bequeath to her the sum of fifty thousand dollars to be paid to her within ten days after vacation of my homestead and after her releasing of her dower right in my real estate, the same to be in full satisfaction of such right, but if she neglects or refuses within six months after my decease to comply with above conditions, she is to have her dower right only in my real estate and no share whatever in my personal estate.

"If my wife accepts above conditions, I direct my executor to pay her annually during her lifetime the income derived from the investment of the sum of fifty thousand dollars in addition to the above."

The widow accepted the first-mentioned bequest and received $50,000 in money. As to the second bequest, the bill alleges that complainant received the interest on $50,000 from the sole executor, Weeks, in accordance with the provisions of the will up to October 8th, 1901, the testator having died on May 18th, 1898; that it was discovered "that Weeks had misappropriated the trust fund *which had been set aside for your oratrix,* to wit, the sum of $50,000, leaving remaining of such fund about the sum of $29,350;" that on June 6th, 1902, Weeks was removed from the trusteeship because of his misappropriation, and that the new trustee took possession of $29,350 the balance left by him. The bill then states that the residuary estate has been wholly distributed to and between Robert Lister and Esther G. Selby, the residuary legatees, who are also residuary legatees of the $50,000 fund.

Taking the allegations of the bill as a whole, it appears that Weeks, in accordance with the directions of the codicil, set apart the $50,000 as a separate fund; that he paid the complainant the interest accruing from the investment of it down to October, 1901; that he misappropriated it to the extent of $20,670, and that for this misappropriation and other acts in breach of his duty as trustee he was removed.

The question is whether the complainant can compel the residuary legatees, to whom the residuary estate has been completely transferred, to make good out of what has come into their hands the amount so misappropriated by Weeks; in other words, whether the annual payment to be made to the widow during her life is a charge upon the whole residuary estate. This must depend upon the intention of the testator as we find it expressed in the language of the bequest. The direction is to pay "the income derived from the investment of the sum of $50,000." That means that the executor is to take $50,000 out of testator's estate, invest it and pay the income, whatever it may be, derived from the sum thus invested. It thus appears that what the testator intended to give, and did give, was a definite sum of money,

the interest of which was to be paid to Mrs. Lister for life and the principal of which was to be paid to his two children at her death, and not an annuity chargeable on the entire residue.

In *Willmott* v. *Jenkins, 1 Beav. 404,* Lord Langdale says: "If an executor makes payment to a legatee in person or to a trustee for a legatee, *or makes such appropriation as is equivalent to payment,* the other persons entitled under the will are not to be called on to contribute for any loss which may happen to the fund so paid or appropriated." It was held there that the appropriation was incomplete because the executor had carried several sums to one account and had invested them in his own name, without making any declaration of trust, but here the bill states that the sum of $50,000 was set apart by the executor for the particular purpose directed and that all the other money of the estate was distributed. Even where a testator gave an annuity, which in general stands upon a different footing, and directed that it should issue "out of so much stock in the navy five per cent. annuities as shall be fully sufficient to produce and answer the payment" of the yearly sum given, Vice-Chancellor Shadwell held that the investment having been made as directed, the legatee was not entitled to have the deficiency caused by the enforced conversion of the five per cent. into a four per cent. annuity, supplied out of the testator's residuary estate. *Kendall* v. *Russell, 3 Sim. 424.*

The case of *Mills* v. *Smith, 141 N. Y. 256,* is directly in point. There a testator gave to his executors the sum of $20,000 in trust to invest on bond and mortgage and apply the net income to L. M. for life and at his decease to divide the principal among his children. The fund was invested and subsequently misappropriated. The effort was to hold the residuary legatees. Justice Gray said: "This action is simply an attempt to fasten upon the distributees of testator's residuary estate the responsibility for the subsequent default of the executors, as trustees for plaintiff's father. This cannot be done. Where the loss of a fund is due to waste or misconduct of the executor and trustee, he and his estate alone can be looked to. No claim for contribution arises against residuary legatees in such a case."

The authority mainly relied upon by complainant's counsel (*Trenton Trust Co.* v. *Donnelly, 65 N. J. Eq. (20 Dick.) 119*) is not in point. There money had been bequeathed in trust to pay the interest to testator's wife for life, remainder to his sisters and the heirs of his deceased brother. The *corpus* was diminished by an unfortunate investment and the question was how the loss was to be borne as between the widow and those who took the principal at her death. The widow was held entitled to part of the *corpus* to indemnify her, in part, against her loss of interest. There was no attempt to make the residuary or other legatees contribute to or make good the loss suffered. The bill in the present case is not framed upon the theory of that case and no facts are stated that would make its principle applicable.

The complainant also asserts that when she relinquished her dower right she gave a valuable consideration for the legacies and that she therefore stands upon a different footing from the ordinary legatee. If the question had been whether she was not entitled to a preference on a deficiency of assets, she might have prevailed, but the question here is quite different. She received, in the first instance, all that she bargained for. The estate gave her $50,000 in cash and it appropriated to her use, in the hands of a trustee, the other $50,000. The mere fact that that trustee was Weeks, the executor, instead of someone else, can make no difference so far as the legal aspect of the case is concerned. If the trustee subsequently misappropriated the money, *he* is responsible and not the other distributees of the estate.

The bill should be dismissed.