## PHILIP B. FOLEY

*vs.*

## MARTHA V. SYER,

SURVIVING EXECUTRIX OF JOHN FOLEY, DECEASED.

*Wills: construction; life estates; in funds; investments; rights*
*of legatee in remainder; distribution; duty*
*of executor.*

Where a legacy consists of money or of property whose use
is its conversion into money, it is the duty of the executor
to invest the same in productive funds, or put it out on ade-
quate security, under the direction of the Orphans' Court, or
of a court of equity, so that the dividends or income may be re-
ceived by the legatee for life; and the principal, after the death
of the legatee for life, may be received by the legatee in re-
mainder.                                              pp. 87-88

But where a testator indicated by his will his intention that
a life tenant should take the rest and residue of the estate,
with full authority to invest and re-invest the principal accord-
ing to her preference, and to use the income as she pleased,
a distribution of the estate made to the legatees and to the life
tenant is sufficient to show a full and complete administration.
                                                     pp. 85, 89

The remaindermen have the right to seek aid of a court of
equity for the protection of their interest, if they are shown to
be in jeopardy, provided such courts have jurisdiction over the
parties or property.                                     p. 90

Where the life tenant in such a will is a non-resident, and the property is not within the jurisdiction of the courts of this State, such protection, even though desirable, can not be furnished by the courts of equity in this State. p. 90

*Decided June 24th, 1913.*

Appeal from the Orphans' Court of Baltimore City.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. Milnes Maloy* (with whom were *E. O. Grimes, Jr.,* and *Maloy, Brady and Embert* on the brief), for the appellant.

*H. Webster Smith* (with whom were *Bond, Robinson and Duffy* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore City dismissing a petition of the appellant filed in that Court. The last will and testament of John Foley, the father of the appellant, was admitted to probate in January, 1868, and Martha V. Foley and William B. Larmour qualified as executors. The testator, after leaving two hundred and fifty shares of "Lochiel Stock" to his three sons as therein provided, left all of the rest and residue of his property to his wife, "Martha Virginia Foley, to be held and enjoyed by her together with the rents, income and profits thereof, for and during the term of her natural life and no longer, with power and full authority to her to invest and

reinvest the principal according to her preference for any specific security, and to use and apply the income as she pleases". He then directed that after the death of his wife his estate "be applied and disposed of" as therein provided, and that, his three sons having during his lifetime and by the provisions of his will received more than $10,000.00, such of his children as may be living at the death of his wife, and who have not been thus advanced or mentioned in his will, shall each receive the sum of $10,000.00, so as to put them on an equality with their three brothers, and that the balance then remaining be equally divided among his children, share and share alike. He provided that if any one of his children die "without leaving behind it living at the death of my said wife heirs of or on its body begotten, the share of such child shall be thrown into the common stock," and then authorized and empowered his wife, "if she shall at the time deem it expedient and proper, to grant and assign any security she may hold or cash money, or both, to the amount altogether of ten thousand dollars, to either of my daughters or to each of them, at the time of the marriage of my said daughters * * * and any daughter thus provided for shall be considered equally advanced with my said three sons—as she then will already have the ten thousand dollars which upon my wife's death she would have 'first' received".

The petition alleges that William B Larmour is deceased and that Martha Virginia Foley married about two years after the death of John Foley and her present name is Martha Virginia Syer; that under orders of the Orphans' Court dated September 14th, 1868, and December 29, 1868, the executors were authorized and directed to invest the sums of $6,000.00 and $14,000.00 respectively, in such securities as the widow might desire, and that so far as the records of the Orphans' Court disclose no change had been made in those investments and they are still under the jurisdiction and authority of the Court; that under the adminis-

tration accounts passed in the estate of John Foley property
and cash amounting to $44,519.67, were distributed to the
widow for life—including thirteen coupon bonds of the
United States of the par value of $1,000.00 each, and fifty-
six shares of the Danville National Bank, of Danville, Pa.,
valued at $7,280.00; that no order had been passed author-
izing any change in those investments and they are still
within the jurisdiction and subject to the orders of the
Court; that the administration of the estate of John Foley
has not been completed, the orders passed not distributing
the rest and residue in accordance with the terms of the will.
It is then alleged that Martha Virginia Syer now resides
with her husband in San Jose, California, where she has
lived for many years; that she has not made any report to
the Court for the past forty-four years; that during all that
time property in which she only has a life estate and in
which petitioner has an interest under the terms of his
father's will has been completely under her control, and
he has no knowledge nor means of knowing whether the
money and property have been invested, and, if invested, in
what it is invested.

It prays that an order be passed requiring her to file a
report showing the investments representing the rest and
residue of the estate, and requiring her to produce in Court
the securities. etc.   On May 25th, 1912, an order was passed
requiring her as surviving executrix to produce in Court the
rest and residue of the estate, but on September 20th, 1912,
she filed a petition asking the Court to rescind the previous
order, which she alleged had been passed without giving her
an opportunity to answer, and to allow her to answer the
allegations contained in the petition.   That was done and
she filed an answer as surviving executrix.   It denies that
the investments are still under the jurisdiction and authority
of the Court, and alleges that the executors on May 22nd,
1869. filed their administration account under which they
finally distributed the estate, according to the terms of the

will, to Martha V. Foley, widow, and they received a release
from her which was duly recorded. She admits that the
property in which she has a life estate has been completely
under her control and alleges that she as surviving executrix
is not required to further report to the Court because she
has stated her final administration account, distributing the
assets according to the terms of the will. She alleges that
acting under the terms of the will she .and William B. Lar-
mour, executors, distributed the rest and residue of the estate
to Martha Virginia Foley, individually, and that it is now
vested in her, in her individual capacity and not as surviving
executrix; that at the time the administration accounts were
passed she was advised by counsel that : he, in her individual
capacity, had the complete control of the funds, constituting
and composing the rest and residue of the estate, and acting
on that advice, she, in her individual capacity, assumed con-
trol of the same, and has ever since done so; that as surviv-
ing executrix she has no assets in her hands, and the Court
has no jurisdiction in the premises.

The petition was amended by alleging that the securities
on the bond of the executors had long since been dead and
their estates fully distributed; that in the event of the Court
determining that the estate of John Foley is still within its
jurisdiction the surviving executrix be required to file a
new bond; that she be required to produce in Court the
corpus of the estate, and that the same be invested under the
direction of the Court; that the administration accounts,
which do not show a full administration and distribution, be
amended and corrected and the surviving executrix be
ordered to file an account distributing the rest and residue
of the estate. An answer was filed denying the matters and
facts set forth in the amended portion of the petition.

Testimony was taken and the petitioner testified that he
is a son of the testator and was eighteen years of age when
his father died; that Mrs. Syer is his step-mother; that his
father had eight children by his first wife, and Mrs. Syer

had two daughters by John Foley and one son by her second marriage. The first account of the executors charges them with $66,232.83, and they were allowed credits for payments and disbursements (including the Lochiel stock) amounting to $21,713.16, and then follows the entry: "Balance due the estate and which is retained by Martha V. Foley, the widow of the said deceased, and one of these accountants, under the terms and conditions mentioned in the will of said deceased, to be held by her during her natural life, viz: 4 shares of Susquehanna River and North and West Branch Telegraph Co. stock, incorporated by Act of Penn. Legislature, A. D. 1849, which is worthless, and so returned; 13 coupon bonds of the U. S. for $1,000 each appraised at $1,060 each, $13,780.00; 56 shares of Danville National Bank of Danville, Pennsylvania, appraised at $130.00 per share, $7,280.00; and in cash, $23,459.67; total, $44,519.67; estate accounted for, $66,232.83."

That account was passed by the Orphans' Court on May 22, 1869. On May 8th, 1871, a second account was passed, in which the executors charged themselves with cash received amounting to $1,920.00, and after being allowed $216.86, there was distributed: "Balance due the estate, being the amount to be paid to Mrs. Martha V. Syer under the will of the deceased, $1,703.14."

On May 22nd. 1869, Martha V. Foley executed a release to the executors in which she acknowledged receiving $2,522.79 in cash, $13,780.00 in U. S. bonds, $7,280.00 in Danville Bank stock, which, together with the amount of money theretofore received by her, to wit, the sum of $23,-062.83, "is the full amount coming to me, as widow and devisee of said John Foley, including the amount of my commissions as executrix, under account passed by Orphans' Court of Balto. City this day," and on May 3rd, 1871, she executed another release for $1,703.14—"said balance being due and payable to me under a clause of the said will as the widow of said deceased."

Prior to the passage of the first account the Orphans' Court had on the petition of the executors authorized Martha V. Foley to invest $6,000.00 in mortgages upon real or leasehold property, or other securities, as she may prefer, "she being in virtue of the last will and testament of said testator the owner of the life estate in said sum of money, and entitled to apply the proceeds of the same to her own use and benefit, during her natural life," and also the sum of $14,000.00 in any securities she may prefer—the order concluding in the language of the one just quoted.

There can be no doubt that the testator only gave a life estate in the rest and residue of his estate to his widow. The terms of the will are too plain to admit of any question as to that. It is likewise clear that the testator did not intend the executors to retain in their hands the estate so left his wife. He left the rest and residue of his estate to his wife *"to be held* and enjoyed *by her* together with the rents, income and profits thereof, for and during the term of her natural life and no longer, with power and full authority *to her to invest and reinvest the principal* according to her preference for any specific security." Then by the sixth clause he authorized and empowered *his wife*— not his executors—"to grant and assign *any security she may hold or cash money,* or both" to his daughters as above mentioned. That clause would seem to conclusively show that the testator intended his wife to hold the securities and cash he left to her for life, if there could be any doubt about the other clauses.

The distributions made to the widow were in terms which are so similar to those in other cases which have been before this Court that it will be well to refer to some of them. In *Myers* v. *Safe Deposit & Trust Co.,* 73 Md. 413, Mrs. Myers, the executrix of her husband, passed an account in the Orphans' Court, in which she charged herself with the whole estate and, after receiving credit for proper charges against the estate for debts, funeral charges and costs of administra-

tion, the account was balanced as follows: "Allowed said accountant for the residue of the estate retained by her as the widow of the deceased, for the purposes and subject to the conditions and provisions set forth in the will, consisting of," etc. This Court on page 425 said: "In her account she credits herself with the whole residue, and that account was approved by the Orphans' Court. That was a most effectual way of making the final distribution. Thereafter she held not as executrix, but as tenant for life, with the fiduciary powers conferred on her by her husband's will. The estate was entirely closed, and her administration was at an end; and unless there were other assets discovered which had never passed into her hands, as executrix, there was no occasion for an administration *de bonis non.*" The Court there referred to *Binnerman* v. *Weaver,* 8 Md. 518. The will before the Court in the latter case left the property to the testator's wife, with certain trusts in favor of the children. Her life estate was dependent upon her remaining unmarried. She passed her account in the Orphans' Court and took charge of the estate as life tenant, or during widowhood. She married again, and a petition was filed asking for the revocation of her letters and the appointment of an administrator *d. b. n.* Her letters were revoked and she was ordered to recharge herself with the amount she had retained as life tenant, and to distribute the same among those legally entitled to it. That order of the Orphans' Court was reversed on appeal and our predecessors said: "The widow was entitled to a life estate in the property mentioned in the will, subject to the trusts engrafted upon it. She cannot be required to recharge herself as directed by the order of the Orphans' Court. The settlement already made by her discharges her bond, and if she fails to perform her duty enjoined in the will the remedy is in a Court of equity."

In *Crean* v. *McMahon,* 106 Md. 507, JUDGE PEARCE referred to many of the cases in this State, and in the recent

case of *Sydnor* v. *Graves,* 119 Md. 321, we again had occasion to consider the question. In the latter case a bill in equity was filed by the husband and children of a deceased child of William C. Smith, the testator, against two of his daughters, some children of deceased children and a son, individually and as administrator *d. b. n. c. t. a.* of William C. Smith. The property was left to the widow "for and during her natural life, to be used and enjoyed by her as she shall think proper, as fully as if the same were hers in fee simple." The widow, as executrix, settled an account in which, after charging herself with the inventory and debts collected and obtaining credit for sums paid out and her commissions, this statement was made: "Retained by this accountant the balance of estate bequeathed to her under the last will and testament of the testator, subject to the provisions therein contained, viz." Mrs. Smith having removed to Virginia, died there, and her estate was being settled in a Virginia Court. We held that the account of the executrix amounted to a distribution of the estate to the wife for life and she thereafter held as legatee and not as executrix. We were careful not to determine whether the widow only took a life interest, because her estate was then being administered by a Court of Virginia and we thought it due that Court not to express any opinion on the subject, as we concluded we had no jurisdiction over the property in question.

As we have said, there can be no doubt that Mrs. Foley (now Mrs. Syer) only took a life estate, and if she or the estate of the testator was within the jurisdiction of an equity Court of this State, there could be no difficulty in asserting its powers, if necessary for the protection of the remaindermen. The general rule established by many decisions in this State is that announced as early as *Evans* v. *Iglehart,* 6 G. & J. 196, that: "Where a legacy consists of money or property whose use is the conversion into money, it is the duty of the executor to invest the same in some productive

fund, or it must be put out on adequate securities and most
properly under the direction of the Orphans' Court, or a
Court of equity, so that the dividends or income may be
received by the legatees for life, and the principal, after
the death of the legatee for life, may be received by the
legatee in remainder". That of course depends, however,
upon the terms of the will, and even when the will does not
contain provisions which relieve the executor from the neces-
sity of investing the estate under directions of the Court,
whether he shall retain the securities, after the investments
are made, must depend upon the provisions of the will, or
in some cases upon the orders of the Court. In *Siechrist* v.
*Bose,* 87 Md. 284, a sum of money was left to Margaret
Siechrist for life, and after her death to be equally divided
among her children then living, and the descendants of any
who may have died. The executors obtained an order to
invest the fund and invested part of it, under that order,
in some Baltimore City stock. Some of that stock was after-
wards ascertained to be a forgery, but the City authorities
authorized a new certificate for the part admitted to be valid
and under authority of the Orphans' Court the executors
turned over that certificae to the life tenant, which was in
her name subject to the terms of the will. When the stock
matured the life tenant procured an order authorizing her
to surrender the certificate and receive the money. The
order did not require her to bring the money into Court,
and the record did not show that she had ever made a
report of the transaction or reinvested the fund. The
children of the life tenant prayed the Orphans' Court
to require the surviving executrix to show how the money
was invested, if invested to bring into Court the evidence of
investment, and if not, to bring the money into Court. The
surviving executrix answered that the sum had been fully
administered, and as surviving executrix she had no further
concern therewith, and the Court was without jurisdiction.
This Court said: "In this case it was the duty of the execu-

tors to invest the fund in accordance with the directions of the Orphans' Court, and when so invested no right remained in the executors to retain it. The bequest was to Mrs. Siechrist for life; the testator intended it to be her property for that period; she therefore was entitled to have the possession of it for that period, on such terms as would protect the interests of those who·were also interested in the fund. What she did with it after she received it was a matter that could not concern anyone else than those who were to take the fund at her death. If her treatment of it was such as to jeopardize its safety, a Court of Equity on proper application has full power to require such security to be given as might be needed." The opinion concludes by saying, "that after the investment of the money in compliance with the order of the Court, and the allowance in the account of the executors of the amount so invested, the administration terminated, and the executors became discharged from all further liability as to the legacy. Margaret Siechrist then held the fund as tenant for life, and the duty of protecting the fund was upon her and not upon the executors". See also, *Oesterla* v. *Gaither,* 90 Md. 40, and *Smith* v. *Michael,* 113 Md. 10, where *Siechrist* v. *Bose* is referred to at some length.

It may seem to be of some advantage to have a fund invested by the executor and then turn over the securities, and not the cash, to the life ·tenant, as the fund can be more readily traced, but if the life tenant can after receiving the securities realize on them (and the executor is not responsible, as shown above), it does not in fact afford much more substantial security to the remainderman than payment to the life tenant in cash would. But however this may be, as is shown by the late case of *Sydnor* v. *Graves, supra,* and others, if the testator indicates by his will that it is his intention that the life tenant takes the estate as left by him, and there is nothing to show an intention that the executor must first invest it, distributions such as were made in this estate are sufficient to show a full and complete administra-

tion.   The bulk of the estate was in fact invested before it was turned over to the life tenant, as at least $20,000.00 of the $23,459.67 mentioned in the first account as cash had been previously invested under orders of Court, and the balance distributed to her in that account was already invested, but the quotations from the will which we have made above show that the testator gave the life tenant power and full authority "to invest and reinvest the principal according to her preference for any specific security," and clause six shows that he contemplated that she could hold securities and cash.

Remaindermen have the right in this State to seek the aid of a Court of equity for the protection of their interests, if they be shown to be in jeopardy, if such courts have jurisdiction over the parties or the property.   As the life tenant under this will is a non-resident and the property is not within the jurisdiction of the courts of this State, such protection, if desirable, can not be here furnished those interested in this estate, but it is not to be supposed that they cannot have such rights as they may have, fully protected in California where the life tenant resides.

Being of the opinion that the estate was fully administered, and the Orphans' Court of Baltimore City no longer has jurisdiction over it, the order will be affirmed.

> *Order affirmed, the appellant to pay the costs.*