## BEETHOVEN A. FOGLE, ET AL. *v.* JOSEPH E. STITELY, ET AL.

[No. 78, October Term, 1945.]

*Decided February 8, 1946.*

The cause was argued before MARBURY C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Charles O. Clemson* for the appellant.

*Francis Neal Parke* for the appellee.

MARKELL, J., delivered the opinion of the Court.

The will of George G. Lambert, dated June 16, 1900, probated August 14, 1911, provided:

"* * * after my Just debts (if any there be), and suitable tomb stones erected at my grave are paid, I devise and bequeath as follows—

"I give devise and bequeath to my dear wife Belinda A. Lambert all my Estate Real personal and Mixed Wheresoever Situated or found during her natural life, without Bond or Security, and at her death, I give devise

and bequeath said Whole Estate to my daughter Eva F. Stitely the said Estate during her natural life, and at the death of my said daughter, I devise and bequeath the said Estate to her heirs at law forever, Excepting however one thousand dollars, which I give and bequeath to her Husband namely Joseph E. Stitely provided he outlives my said daughter.

"But should my said daughter die after coming into possession of said legacy, or before coming in possession thereof, leaving no child or children living, or the descendant of a child or children living, then I revoke all the above devises, Except to my said wife and said son in law (if he becomes entitled to said legacy under the provision aforesaid[)], And Give devise and *and* bequeath my said Estate after the death of my said Wife to her and my own heirs at law forever Equally."

The wife was appointed executrix.

By her "first account," passed April 1, 1912, the executrix distributed to herself, as "legatee for life, subject to the provisions of the will * * * declared as to the remainder," the entire "balance of estate for distribution," $5,138.46, comprising "goods and chattels mentioned in the inventory," $994.40; "debts due testator," *viz.*, five "promissory notes," "with interest at 5%," $3900; and cash, $244.06.

The widow died in or about April 1929. The daughter, as administratrix *d.b.n.c.t.a.* of the testator, by her "first and final account," passed April 23, 1929, charged herself with "the amount of money and personal property distributed" to the widow, "life-tenant," as shown by the administration account of the executrix, $5,138.46; prayed allowance for costs, $29.06, "the total amount of goods and chattels distributed to life-tenant, which were consumed in use," $994.40; and retained "to be held by her in accordance with the * * * will," $4,115. The daughter, as administratrix of the widow, by her "first and final account," also passed April 23, 1929, distributed to herself the "residue of estate for distribution," $6,637.

The testator owned a 185 acre farm, acquired in 1888. In July 1935, the farm (except a few acres in Frederick County) was sold for non-payment of taxes for 1930, 1931, 1932, 1933 and 1934. By equity proceedings instituted in August 1935, which need not be described, the property was redeemed from the tax sale, and the entire farm was sold under a decree of July 20, 1936. The net proceeds were paid to Union Bridge Banking and Trust Company, which by the decree was appointed Trustee to receive the proceeds and invest them "so as to inure in like manner as by the * * * will * * * provided to the use of the same parties who would be entitled to the land sold."

The daughter died in December 1943, leaving nothing. She had presumably appropriated and consumed all the personal property received by her as life tenant under the testator's will. The Trustee received $1,848.54; proceeds of the land, and thereafter $286.50, income from the proceeds, which under the decree was added to *corpus* on account of losses sustained through the life tenant's neglect to pay taxes. After deducting expenses, the Trustee holds for distribution $2,050.25.

The daughter was survived by her husband, Joseph E. Stitely, 84 years old, and by a daughter, Agnes M. Wolfe, who was born about a year before the date of the testator's will.

The appellant is the assignee of two judgments against Stitely and his wife. Attachments on these judgments were laid in the hands of the Trustee, as garnishee, against Stitely's interest (if any) in the proceeds of the land.

The Trustee filed a report and account, in which it expressed the opinion that the whole fund held by it for distribution "is the property and estate" of Agnes M. Wolfe, the daughter's "only child and sole heir at law." The appellant objected to the ratification of the report and account, on the ground that, to the extent of $1,000, the fund should be distributed to the appellant, as judg-

ment creditor of Stitely. The lower court overruled the appellant's exceptions, ratified the Trustee's account and ordered payment in accordance therewith.

The only question raised on this appeal is whether the testator's real estate is chargeable with the payment of Stitley's $1,000 legacy. On this question the details of the will and the outline of the legal proceedings since the testator's death in 1911 are relevant only as illustrating the scope of the question and the complications of the subject matter. For instance, we need not ponder why, after distribution of the entire personal estate by the executrix to herself as life tenant, the daughter was granted letters *d.b.n.* and purported to distribute the same estate a second time to herself as second life tenant. *Sydnor v. Graves,* 119 Md. 321, 325-329, 86 A. 341. If the distribution to the first life tenant was proper, then the estate was fully administered and there was no basis for grant of letters *d.b.n.* The terms of the will leave little doubt as to the testator's intention that distribution should be made to his widow as life tenant. *Evans v. Iglehart,* 6 Gill. & J. 171, 192-198; *Siechrist v. Bose,* 87 Md. 284, 294-297, 39 A. 745; *Cesterla v. Gaither,* 90 Md. 40, 44-46, 44 A. 1035; *Foley v. Syer,* 121 Md. 79, 85-90, 88 A. 38. *Cf. Smith v. Michael,* 113 Md. 10, 77 A. 282; *Sharp v. State,* 135 Md. 551, 560-562, 109 A. 454.

At common law real estate was not chargeable with the payment of legacies in the absence of a clear intention on the part of the testator that it should be so charged. *Miller on Construction of Wills,* Secs. 302, 303. In the application of this rule conflict developed among authorities in different jurisdictions.

In *Pearson v. Wartman,* 1895, 80 Md. 528, 31 A. 446, a testator gave his wife all his real and personal estate for life, and after her death gave a number of pecuniary legacies and gave, devised and bequeathed "the remaining portion" of his estate to named persons. This Court, by Chief Judge Robinson, said: "Now, if the question arising upon this will was one of first impression, and

we had to construe it by the language in the will itself, and without reference to the construction which has been put by this Court upon similar language in other wills, there would be, we must admit, much force in the ingenious argument of the counsel for the appellants; for where a testator gives certain pecuniary legacies, and then gives the remaining portion of his estate, 'or the rest and residue of his estate,' it may be fairly argued, that he meant the remaining portion of his estate after the payment of the legacies; and since the decisions in *Bench v. Biles,* 4 Madd. 187, and *Grenville v. Brown,* 7 H. L. Cas. 689, this may be considered the established rule in England. But in this state, beginning with *Stevens v. Gregg,* 10 Gill & J. 143, decided more than 50 years ago, and affirmed in *Power v. Jenkins,* 13 Md. [443], 458, and reaffirmed in the recent case of *White v. Kauffman,* 66 Md. 89, 5 A. 865, it has been considered as settled law that where a testator gives legacies, and then gives 'the remainder of his estate, real and personal,' or 'the balance of his estate,' or 'the rest, residue and remainder of my estate,' these and other like terms are not in themselves sufficient to show an intention on the part of the testator to charge the real estate with the payment of legacies." 80 Md. at page 532, 31 A. at page 446. These Maryland decisions were based on the opinion of Chancellor Kent in *Lupton v. Lupton,* 1817, 2 Johns, Ch. 614, quoted with approval in *Stevens v. Gregg, White v. Kauffman* and *Pearson v. Wartman.*

To the contrary, "the established rule in England" was said, by Lord Chancellor Campbell in the House of Lords in 1859, to "have prevailed for a century and a half." 7 *H. L. C.* 696. In 1853 the Supreme Court regarded it as "the settled law both in England and the United States." *Lewis v. Darling,* 16 How. 1, 10, 14 L. Ed. 819. Thus the Maryland cases were at variance with the rule that prevailed in most other jurisdictions. *Page on Wills,* Sec. 1452, note 13; *Woerner, American Law of Administration,* 3rd Ed., Sec. 452, p. 1545; Sec. 491, pp. 1710-1717.

In the case at bar it is clear that under the English rule the real estate would be chargeable with the payment of the Stitely legacy; it is almost as clear (but see *Ogle v. Tayloe,* 49 Md. 158, 175, 176) that under the Maryland rule it would not be.

In this state of the law Chapter 438 of the Acts of 1894 (Code of 1939, Art. 93, Sec. 346) was enacted. In *Pearson v. Wartman, supra,* 80 Md. at page 531, 31 A. at page 446, the Court said: "The wife survived the testator about 20 years, and *upon her death the personal estate which had been given to her for life proved to be insufficient for the payment in full of the legacies.* This will having been executed prior to the Act of 1894, c. 438, the question is not affected by that act, which provides: 'In all wills hereafter executed the real estate of every testator not specifically devised shall be chargeable with the payment of pecuniary legacies, wherever the personal estate after the paymnt of debts shall prove to be insufficient, unless the contrary intention shall clearly appear'." (Italics supplied.)

So in the instant case, the daughter survived the testator over thirty years, and upon her death the personal estate, which had been given to her for life, proved to be insufficient for the payment of the Stitely legacy. The will having been executed since 1894, the Act is applicable, and the real estate is chargeable with the payment of Stitley's $1,000 legacy.

On behalf of Agnes M. Wolfe, the ultimate residuary legatee and devisee, the Trustee contends that the statute is applicable only when the personal estate, after the payment of debts, shall prove, *at the time of the payment of debts,* to be insufficient for the payment of pecuniary legacies. To interpolate this limitation in the statute, "would be to force an unnatural construction upon its language, in order to defeat the beneficent general purpose of saving, except as against specific devisees, legacies which would otherwise be lost." *St. John's Church*

*v. Dippoldsmann,* 118 Md. 242, 246, 84 A. 373, *Miller on Construction of Wills,* Sec. 305.

The statute simply reversed a rule of construction which had been found to defeat the actual intention of testators. The interpolation would produce confusion worse confounded, by establishing two opposite rules, retaining the old in the very circumstances in which the change was most needed. In *Ogle v. Tayloe, supra,* the fact that a life-tenant "had the right to dispose of the personal property in any manner she might think fit" was one of the "facts from which it might be fairly and reasonably inferred that the testator meant" that a legacy payable upon the death of the life-tenant "should be charged on the real estate." *Pearson v. Wartman, supra,* 80 Md. at page 534, 31 A. at page 447. Under the statute the real estate is chargeable with the payment of legacies whenever the personal estate "shall prove to be insufficient" when put to the test, *i.e.,* at the time for payment of the legacies, however long deferred.

The Trustee invokes the doctrine that: "If an executor makes payment to a legatee in person, or to a trustee for a legatee, or makes such an appropriation as is equivalent to payment, the other persons entitled under the will are not to be called on to contribute for any loss which may afterwards happen to the fund so paid or appropriated." *Willmot v. Jenkins,* 1 Beav. 401, 404; *Mills v. Smith,* 141 N. Y. 256, 36 N. E. 178; *Lister v. Hardin,* 76 N. J. Eq. 360, 76 A. 558. This doctrine is unrelated to payment of legacies out of real estate and to the facts of the case at bar. The Stitely legacy was never paid to the legatee or to a trustee for him, or appropriated or set apart for him by the executrix as such or as trustee. Both the real and personal estate came into the possession of the same two successive life tenants. This legacy was payable, and the residuary estate passed to the ultimate residuary legatee, only upon the death of both life tenants. As the personal estate *then* proved to

36

be insufficient, the legacy was payable out of the real estate.

The decree will be reversed and the cause remanded for passage of a decree in conformity with this opinion.

> *Decree reversed and cause remanded, costs to be paid by the Trustee out of the fund.*